NORTHROP's executors *against* GRAVES.

Where money is paid by one, under mistake of his rights and his duty, and which he was under no legal or moral obligation to pay, and which the recipient has no right in good conscience to retain, it may be recovered back, in an action of *indebitatus assumpsit,* whether such mistake be one of fact or of law.

Therefore, where *A,* the executor of *B,* supposing *C,* the wife of *D,* to be entitled, under the will of *B,* to a legacy of 500 dollars, paid that sum out of *B's* estate, to *C,* in the presence of *D,* and with his consent, whereas *C* was not in truth entitled to such legacy under the will of *B,* which was known by *D,* at the time of the payment, but was not disclosed to *A ;* in an action of *indeb. assump.* for money had and received, afterwards brought by *A* against *D,* it was held, 1. that in legal effect, the money was received by *D ;* 2. that *D* had no moral or conscientious right to retain it ; 3. that *A* was entitled to recover it back, in this action ; 4. that *D* was liable to pay interest from the time of demand, and from that time only.

THIS was an action of *indebitatus assumpsit* for money had and received ; tried, on the general issue, at *Danbury, October* term, 1848.

The plaintiffs are the executors of the last will of *David Northrop,* late of *Sherman,* deceased. He died in *April,* 1832 ; and his will was duly proved and approved. *Sally Graves* is the wife of the defendant, and is still living.

The plaintiffs, in support of their claim, offered in evidence,

1. The will of *David Northrop,* containing the clause recited in 18 *Conn. R.* 333.

2. The depositions of *Sylvanus Merwin, Flora A. Merwin* and *Orrin Stevens.* The former testified, that in the spring of 1842, he, with his wife, went to the dwelling-house of the defendant in *Sherman ;* that the defendant soon afterwards spoke of the plaintiff's having been there, that day ; said, that they had paid 500 dollars, on the will of their father ; that he had given no receipt for the money himself, but that Mrs. *Graves* had given one ; that by the will, it was to go to the sons, and the plaintiffs would have it to pay over again to them ; that they could sue the plaintiffs and recover it, but the plaintiffs could not get the money back, paid to Mrs. *Graves,* as he had not receipted it himself ; that the deponent was acquainted with the hand-writing of Mrs.

*Fairfield,*
June, 1849.

Northrop
*v.*
Graves.

*Graves,* and the signature to said receipt was genuine. Mrs. *F. A. Merwin* corroborated the testimony of her husband.

3. The testimony of *Jonathan O. Page,* stating, that in *March* 1842, he held in his hands for collection, a note against the defendant, and called on him for payment thereof, who, at first, declined paying it, on the ground that he had no money on hand ; but in a day or two afterwards, the defendant told the witness, he would pay the note, saying, " we have had some money very unexpectedly come in ; that the plaintiffs had been there, and paid Mrs. *Graves* 500 dollars, for her legacy, bequeathed, by the will of her father, to her, but it was not according to the will, and they would have to pay it over again, as the money was not coming to her, unless the defendant died within ten years from the death of the testator, but was to go to her children."

4. The testimony of *Abraham Briggs,* who testified, that in the summer of 1843, he was on a visit at the defendant's house, when the defendant said to him, that the plaintiffs [naming them] had paid to his wife 500 dollars, on a legacy given to her in her father's will; but that it was not due to her, but to his children, and he was going to sue for it.

5. The receipt of Mrs. *Sally Graves,* the body of which was in the hand-writing of one the of plaintiffs, and was as follows : " Received, *Sherman, April* 7th, 1842, of *David* and *John O. Northrop,* executors of the last will of *David Northrop,* late of *Sherman,* deceased, 500 dollars, in full of a legacy bequeathed by said deceased, in said will, to his daughter, *Sally Graves,* wife of *Jedediah Graves ;* which legacy was to be paid to said *Sally Graves,* by the executors of said will, in ten years after his, the said *David Northrop's* decease." [Signed.] " *Sally Graves,* wife of *Jedediah Graves.*"

6. A letter, signed by the defendant, addressed to the plaintiffs, dated *Dec.* 8th, 1843, demanding the amount of said legacy, and informing the plaintiffs, that he should be in *Sherman* the then next week, and in case the plaintiffs should not pay said legacy, at that time, he must and should proceed to collect the same, as the law directs.

7. The testimony of *Revilo Fuller* and *David D. Hoag,* proving a demand made by the plaintiffs, in *August* or *Sep-*

*tember,* 1846, of the defendant, for the repayment of the 500 dollars, which they had paid to his wife, on the legacy given to her, by the will of her father.

To the whole of the evidence thus offered by the plaintiffs, the defendant objected, on the ground, that it did not conduce to prove, that the money in question was paid by the plaintiffs to Mrs. *Graves,* under any mistake or misapprehension of any facts; but if it conduced to show a mistake of the plaintiffs at all, it was a mistake of the law only: and also, that it did not conduce to prove, that the defendant had received any money of the plaintiffs. The court overruled the objection and admitted the evidence.

The defendant then introduced the testimony of his sons, *Edward Graves* and *George Graves,* detailing the circumstances under which the money was paid to Mrs. *Graves,* and stating, that it was mostly laid out by her in furniture, but not directly contradicting any evidence introduced by the plaintiffs.

Upon all the evidence in the cause, the plaintiffs claimed, that they, as excutors of the will of *David Northrop,* deceased, and from his estate, had paid said legacy of 500 dollars to Mrs. *Graves,* supposing it to be then due and payable to her under the will, and under a misapprehension of the terms and directions of the will; and they prayed the court to charge the jury, 1. That if the money was paid, by the plaintiffs, as executors, to apply on the legacy of Mrs. *Graves,* by reason of their forgetfulness, and misapprehension of the terms of the will, this was a mistake in fact, and the money thus paid might be recovered back.

2. That if the plaintiffs, as such executors, paid the legacy, and, as they supposed, to carry into effect the directions of the will, though the payment was made by reason of a mistaken construction of the legal import of the will; and if the jury, from the evidence before them, believed, that the defendant had no moral or conscientious right to retain the money, the plaintiffs were entitled to recover.

3. That if the legacy was so paid by the plaintiffs, under a mistake of their legal obligations and duty, as executors; and if the money was paid by the plaintiffs, and received by the wife of the defendant, with his knowledge and consent, he knowing of the mistake of the plaintiffs in paying the

money; and if he remained silent, without informing the plaintiffs of their mistake; and if the jury believed, that the defendant had no moral or conscientious right to retain the money, the plaintiffs had a right to recover.

4. That if the plaintiffs were entitled to recover, they were entitled to recover the sum of 500 dollars, together with interest from the time the money was paid.

To such a charge, the defendant objected, and claimed, that if the plaintiffs paid the legacy to Mrs. *Graves*, as proved, yet, that it was not paid under any mistake, or misapprehension, or forgetfulness of facts; but if under any mistake at all, a mistake of the law alone, and if so, that the plaintiffs could not recover. He also claimed, that from the facts proved, the plaintiffs had not sustained their declaration, and that the defendant, from such facts, was not liable in this action: he therefore prayed the court to charge the jury in conformity with his views.

The court charged the jury, as claimed by the plaintiffs; and thereupon the jury returned a verdict in their favour, for 695 dollars. The defendant thereupon moved for a new trial, for a misdirection.

*Dutton* and *H. G. Graves*, in support of the motion, contended, 1. That the mistake of the plaintiffs, if any, was one of *law*, and not of fact.

2. That to entitle a party to recover back money paid by mistake, the mistake must be one of *fact*. If the law only was mistaken, the rule applies, that *ignorantia juris non excusat. Mowatt* v. *Wright*, 1 *Wend*. 355. Where money is paid, with a full knowledge of the facts and circumstances, or with the means of such knowledge, it cannot be recovered back, upon the ground that the party supposed he was bound in law to pay it, when in truth he was not. He shall not be permitted to allege his ignorance of the law; and it shall be considered a voluntary payment. *Clarke* v. *Dutcher*, 9 *Cowen*, 674.

With respect to payments made by mistake, this difference exists, *viz.* that if the plaintiff were merely ignorant of the law, or legal effect of all the circumstances under which he paid the money, and had a full knowledge of the facts, (or such reasonable means of ascertaining them, that he must be

supposed to have been acquainted with them, or to have been guilty of laches in not acquiring the information,) he cannot recover back money so paid. *Chitt. Cont.* 625, 6. (ed. 1844.) *Hill* v. *Green,* 4 *Pick.* 114. *Parsons* v. *Gloucester Bank,* 10 *Pick.* 533. *Lee* v. *Stuart,* 2 *Leigh,* 76. *Story* v. *Barrell,* 2 *Conn. R.* 665. 671. *Clarke* v. *Dutcher,* 9 *Cowen,* 674. *Elliott* v. *Swartwout,* 10 *Pet.* 137. *Mowatt* v. *Wright,* 1 *Wend.* 355. *Ladd* v. *Keney,* 2 *N. Hamp.* 341. *Norton* v. *Marden,* 3 *Shep.* 45. *Bean* v. *Jones,* 8 *N. Hamp.* 149. See also 2 *Kent's Com.* 491. and cases there cited.

3. That if the mistake of the plaintiffs was not a mere mistake of law, they were guilty of such *negligence* that they are not entitled to relief.

4. That the money was *voluntarily* paid to the wife of the defendant, without any agency on his part; and there was no privity of contract, upon which the plaintiffs can predicate their action.

5. That if the plaintiffs were entitled to recover at all, they could not recover the amount, with interest from the time the money was paid. Upon no principle can the defendant be liable to pay interest on money thus paid, until a demand for repayment has been made. The demand, in this case, was not made until *August* 1846, more than four years after the money was paid.

*Hawley,* contra, contended, 1. That the defendant, if liable at all, is liable as for money received by *him.* It was paid into the hands of his wife, in his presence, without objection by him, and with his assent. He had the entire control of it; and if he had no right to retain it, he could, and should have had it restored to the plaintiffs.

2. That it was paid by the plaintiffs, as executors, through a mistake of *fact.* They were mistaken as to the *contents* of the will. This is shown, by the declarations of the defendant, and the other evidence, particularly the *receipt.* Even a misapprehension of the true construction of a will, would have been of the nature of a mistake of fact; and remediable as such. 1 *Sto. Eq.* § 133, 4. *Waite* v. *Leggett,* 8 *Cowen* 195.

3. That if the mistake of the plaintiffs was a mistake of *law,* they may still recover. The intrinsic equity of the

claim is indisputable ; and courts, in modern times, are more disposed to do justice, than to yield to old technical rules, especially where, in their application, they clearly defeat justice.

4. That the defendant has no right to retain this money, on the ground of its having been paid *voluntarily*. It was clearly not intended as a *gift*. The plaintiffs paid it, as executors, and out of the estate of the testator. They supposed that they were performing an *official duty ;* and the defendant *knew* in what capacity they acted, and for what purpose they paid the money.

5. That a case of fraud was established, by the evidence. The defendant knew that the plaintiffs verily believed the legacy was due to his wife ; he also knew that they were mistaken ; yet he did not inform them of their mistake, but suffered them to pay the money under it. 1 *Sto. Eq.* § 122. 123. 130. 135. 147.

6. That the plaintiffs were entitled to interest on the money paid, from the time of payment ; for it belonged to the plaintiffs during the whole time, and was wrongfully and dishonestly kept by the defendant. He had the *benefit* of it, during the whole time. 1 *Sw. Dig.* 714. *pl.* 5. *Selleck* v. *French*, 1 *Conn. R.* 33. *pl.* 5.

CHURCH, Ch. J. In deciding this case, we have not supposed it necessary to examine very critically the opinions of jurists, which have been advanced upon the general question, how far mistakes of law may be relieved against in equity ; nor what is the precise nature of the distinction made by courts between the effect of mistakes of law and mistakes of fact upon the rights and responsibilities of parties. The questions raised on this motion seem to us to be within limits more confined. And yet we shall have occasion to advert to some of the cases on this subject, and to some of the maxims which are supposed to apply to it ; such as *Volenti non fit injuria—Ignorantia legis non excusat ;* and to the maxim often in requisition, and generally false in reality, that every man is bound, and therefore " *presumed, to know the law."* These, and all other general doctrines and aphorisms, when properly applied to facts and in furtherance of justice, should be carefully regarded ; but the danger is, that

*Fairfield,*
June, 1849.

Northrop
*v.*
Graves.

they are often pressed into the service of injustice, by a misapplication of their true meaning. It is better to yield to the force of truth and conscience, than to any reverence for maxims.

In the present case, we establish no new principle, nor depart from any well settled doctrine of the common law. We do not decide, that money paid by a mere mistake in point of law, can be recovered back ;(a) as if it has been paid by an infant, by a feme covert, or by a person after the statute of limitations has barred an action, or when any other merely legal defence existed against a claim for the money so paid, and which might be honestly retained. But we mean distinctly to assert, that, when money is paid by one, under a mistake of his rights and his duty, and which he was under no legal or moral obligation to pay, and which the recipient has no right in good conscience to retain, it may be recovered back, in an action of *indebitatus assumpsit,* whether such mistake be one of fact or of law ; and this we insist, may be done, both upon the principle of *Christian* morals and the common law. And such only was the doctrine of the charge to the jury, in the present case. In such a case as we have stated, there can be no reasonable presumption that a gratuity is intended ; nor is the maxim *Volenti non fit injuria,* at all invaded. The mind no more assents to the payment made under a mistake of the law, than if made under a mistake of the facts ; the delusion is the same in both cases ; in both alike, the mind is influenced by false motives.

Nor are we here deciding a case where the plaintiffs claim to recover under a *mere pretence* that they were ignorant of the law, so much and so strangely feared by Judge *Story ;* (1 *Sto. Eq.* 123. § 111.) but a case in which the jury has found, that such mistake existed in truth, not in pretence.

Nor is this a case where the parties have made a compromise of a claim, in view of a legal doubt or uncertainty as to an asserted right, and have taken their chances of the

---

(a) In the revised edition of *Swift's Digest,* vol. 1. p. 398. the learned editor refers to the case in the text, as having decided, without qualification, the general position here denied. The opinion of the court as, now expressed, had not then been published; which at once accounts for, and excuses, this *mistake of law.*

result; but a case in which the plaintiffs verily supposed they were bound to pay, and the defendant, at the same time, knew they were not: and a case where the money in good conscience as much belongs to the plaintiffs now, as it did when they had it in possession; as the jury, by their verdict, have found. One would think, that a reference to adjudged cases could not be necessary to establish a principle of natural justice so obvious as that a right of repetition must exist in such a case, and that what belongs to one man cannot be acquired by another, without the consent or the fault of the owner. But we will briefly recur to the cases, which, as we think, have recognized the common law on this subject, and see if the principle which we have advanced, is not asserted or recognized, with more or less distinctness, in all of them.

*Fairfield,*
June, 1849.

Northrop
*v.*
Graves.

The action of *indebitatus assumpsit* for the recovery of money had and received, and for money paid, &c. is an action of the common law, but, to a great extent, an equitable action, adopted for the enforcement of many equitable, as well as legal rights. And it is a fundamental principle of this action, that it lies for the recovery of money, which, *ex æquo et bono*, ought to be paid over to the plaintiff; and that the law, in case of such equity, will imply a promise to pay it. 3 *Bla. Com.* 163. The principles of the action were very definitely stated, by Lord *Mansfield*, in the leading case of *Moses* v. *Macferlan*, 2 *Burr.* 1002., and have never since been doubted. He says, "If the defendant be under an obligation, from the ties of natural justice, to refund, the law implies a debt, and gives this action founded in the equity of the plaintiff's case, as if it were upon a contract." He particularizes, and says again: "This kind of equitable action to recover back money, which ought not in justice to be kept, is very beneficial, and therefore much encouraged." He goes on to enumerate several cases, in which money paid cannot be recovered back, as if advanced in payment of a debt barred by the statute of limitations, &c., and as a reason: "Because in all these cases, the defendant may retain it with a *safe conscience*, though by positive law he was barred from recovering." And he refers to money *paid by mistake*, as an instance of the equity, which will sustain the action; making

no allusion to a distinction between a mistake of *law*, and a a mistake of *fact*—a suggestion, we believe, as applied to this action, of a much more recent date.

The same principle was recognized and applied, by the court of *common pleas*, in the case of *Farmer* v. *Arundel*, 2 *Wm. Bla.* 824. "Whenever," says Chief Justice *De Grey*, "money is paid, by one man to another, on a mistake, either of fact *or of law*, or by deceit, this action will certainly lie ;" and because the defendant had good right *in conscience*, in that case, to retain the money, the plaintiff failed to recover, and for that reason alone, although the money was paid under a mistake of the law.

The case of *Bize* v. *Dickason*, 1 *Term R.* 284., deserves special attention, because the force of it was attempted to be parried, by Lord *Ellenborough*, in *Stevens* v. *Lynch*, 12 *East*, 37. The facts show the case to be one of a mistake of law only. The plaintiff was a broker acting under a *del credere* commission, for foreign correspondents, and the bankrupt had been an underwriter, who was liable for losses, which the correspondents of the plaintiff had sustained, and which he had paid over to them, without having received the amount of the losses from the bankrupt. The plaintiff, being indebted, on other accounts, to the bankrupt, in a still larger sum, paid the whole to the assignees of the bankrupt, under a mistake, and without knowing that he had a legal right to set off against the claims of the bankrupt, the amount of the losses he had paid. When he discovered, from the decision of the court, in the case of *Grove* v. *Dubois*, 1 *Term R.* 112., that he had such right, he brought his action against the assignees of the bankrupt, to recover back the amount of the money which he had paid to them, which by law he had a right to have set off. No mistake of facts existed, and none was adverted to, by Lord *Mansfield*, in discussing the plaintiff's right to recover. He refers only to money paid under mistakes of law, and applies the principle he had before so very distinctly stated, in the case of *Moses* v. *Macferlan*, and which had again been recognized, in explicit terms, by Ch. J. *De Grey ;* and without reference to any possible distinction between mistakes of law and of fact, he concludes: "But where money is paid, under a mistake, which there

*Fairfield*,
June, 1849.

Northrop
*v.*
Graves.

was no ground to claim in conscience, the party may recover it back again, by this kind of action." And it may be remarked, that this case was decided, after the case of *Lowry* v. *Bourdieu, Doug.* 468., in which, *Buller*, J. applied the maxim, "*Ignorantia legis non excusat*," to money paid as the premium on an illegal gaming policy.

The next case we refer to, is *Brisbane* v. *Dacres'* executrix, 5 *Taun.* 144. This case has been much noticed, and efforts made to press it into the service of those who have attempted to sustain the doctrines of this defence; but with what propriety, will be seen, by an examination of it. *Mansfield*, Ch. J., and *Chambre*, J. expressly admit the principle we advance; and it is neither denied, nor doubted, as we can see, by *Gibbs* and *Heath*, Js. The plaintiff was the commander of a king's ship in the *British* navy, on the *Jamaica* station; and Lord *Dacres* was the admiral there. The plaintiff, by order of Lord *Dacres*, the admiral, took on board his vessel a large amount of specie, belonging to the government, and transported it to *England*, for which service he received from the treasury a considerable sum as freight. It had been a long established usage in the navy, for commanders of vessels, in like cases, to pay over one-third of the freight to the superior officer, under whose orders they acted; although, at the time this money was paid over, by the plaintiff, he was not bound, by law, to pay it over, and the admiral had no legal right to demand it; but it was paid upon the demand of the admiral, as his right. The action was brought against the executrix of admiral *Dacres*, to recover back the money so paid. *Chambre*, J., in a very conclusive argument, maintained the right of the plaintiff to recover the money. He says: "The plaintiff had a right to it, and the defendant in conscience ought not to retain it. *The rule is*, that when he cannot, in conscience retain it, he must refund it, if there is nothing illegal in the transaction." *Mansfield*, Ch. J. admits the rule, as stated by *Chambre*, J., saying, "If it was against his conscience, to retain this money, according to the doctrine of Lord *Kenyon*, an action may be maintained to recover it back." But because the money was paid and received under the former usages of the navy, he considered it entirely proper and conscientious for the executrix to retain it; and for this reason alone, he opposed a

Northrop
*v.*
Graves.

recovery. *Gibbs,* J., founded his opinion in the defendant's favour upon the fact that the money was demanded as a matter of right, and was paid upon such a demand ; and this being submitted to, and not resisted, at the time, must be considered as a voluntary payment, and indeed, *as a gift!* A controuling feature in the case, entirely unlike the present, and if true, proving very clearly, that the money might be very honestly received and retained. *Heath,* J. takes still a different ground—that there was neither ignorance nor mistake in the case, but that the plaintiff intended, *in fact,* to make a voluntary payment to his admiral. But what is most material to our purpose, is, that neither *Gibbs* nor *Heath* refer to the conscience of the case, and therefore, are not at issue with their brethren, nor with us, upon this turning point of the whole matter.

The vice-chancellor, in the case of *Naylor* v. *Winch,* 1 *Sim. & Stu.* 555., remarks, that "If a party, acting in ignorance of a plain and settled principle of law, is induced to give up a portion of his indisputable property, *under the name* of compromise, a court of equity will relieve." Here, our doctrine is quite distinctly recognized : the case supposed, treats the retention of the money, as unconscientious and wrong, and therefore the relief will be given.

Approved text-writers recognise the law to be as we have stated. *Broome,* in his treatise on *law-maxims,* and under the maxim, *"Ignorantia juris non excusat,"* says, "It is therefore a rule, that money paid with full knowledge of the facts, but through ignorance of the law, is not recoverable, if there be *nothing unconscientious* in the retainer of it ;" and in support of this rule, the case of *Brisbane* v. *Dacres,* is cited ; and of that case, it is said, that the plaintiff did not recover, because it was not against conscience for the executrix to retain the money. And so, under the maxim, "*Volenti non fit injuria,*" the author states the law thus : "But where money is paid under a mistake, which there was no ground to claim in conscience, the party may recover it back again, as money had and received." And the same views of the law on this subject are expressed, by *Stephens,* in his *Nisi Prius, vol.* 1., *p.* 349., whether the mistake be one of law or fact.

*Fairfield,*
June, 1849.

Northrop
*v.*
Graves.

The case of *Bilbie* v. *Lumley*, 2 *East*, 469., has been sometimes cited in opposition to the rule as laid down in the preceding authorities. That case was not argued ; was decided *instanter ;* and whether the insured could, or could not, *in foro conscientiæ*, retain the money, does not appear, and was not a circumstance alluded to, by the court. And we say, in reply, to Lord *Ellenborough's* reference to the maxim, *"Ignorantia legis non excusat,"* that although the plaintiff's ignorance of the law may not furnish a good excuse for his paying the money, it does not follow, that it furnishes a good excuse to the defendants to retain it, against the suggestions of equity and conscience.

The case of *Elliott* v. *Swartwout*, 10 *Peters*, 138., does not conflict with our views. The money there, was paid over, by the importer, to the collector, as duties, upon a demand and claim of right, and without protest. The defendant received it in good faith, and in the same good faith, had paid it over to the treasury of the *United States.*

The case of *Stevens* v. *Lynch*, 12 *East*, 37., to which allusion has been made, was not an action to recover back money paid, but *upon a promise to pay*, made under a mistake of the law. The defendant was the drawer of a bill of exchange, and, as such, had been legally, and was still equitably, bound to pay the money named in it ; but being ignorant that his legal liability was discharged, by reason that the holder had given time to the acceptor, yet he had promised to pay it, and was holden liable. This was the case of a *mere mistake of law*, with the equity and conscience of the case all against him, who acted under the mistake, and not in his favour, as in the case before us. It was like the case of money, paid in ignorance of the legal defence of the statute of limitations, infancy, usury, &c.

We have seen but one case, in which, the doctrine we adopt, has been directly denied, by any court : it is *Clarke* v. *Dutcher*, 9 *Cowen*, 674. We need not review it, because we believe every authority referred to in that case, in support of the opinion of the court, has been now noticed by us ; and we are led by them to a very different conclusion. The reasons advanced by the court there, are not satisfactory to us, if we understand them. They are, that, if the equities of the case—the moral rights and duties of the

*Fairfield*,
June, 1849.

Northrop
*v.*
Graves.

parties—are to have influence in the decision, it will spoil or mar the maxim, that, "every man is bound and presumed to know the law," as well as the maxim, "*Volenti non fit injuria.*" And also, that thereby the practical distinction between a mistake of fact, and a mistake of law, will be destroyed ; both of which assumptions we respectfully deny. That a party may not urge his ignorance of the law as an excuse or palliation of a *crime*, or even of a *fault*, we may admit ; that he may not, by reason of such ignorance, or mistake, obtain any right or advantage over another, we may admit ; but we do not admit, that such other may obtain or secure an unjust advantage over him, by reason of his ignorance or mistake, even of the law. We agree, that men should not complain of the consequences of their deliberate and voluntary acts ; but we do not agree, that acts performed under the influence of essential and controuling mistakes, are voluntary, within the meaning of the maxim referred to. And we say, that neither maxims of law, nor fictions of law, should be so applied, as to work manifest injustice.

We conclude, therefore, with entire unanimity, that the charge of the court, in this respect, ought to be sanctioned.

Another question is suggested, by this motion, and was mentioned in argument—that if this money was paid, by the plaintiffs, in their capacity of executors of *Northrop's* estate, from the funds of his estate, under a mistaken construction of the will, and thus, under a mistake of law ; whether it could not be recovered back, for the benefit of the estate, whatever the law might be, if the plaintiffs had acted merely on their own individual account, as we have here treated it ? This is, certainly, a question worthy of consideration ; but the opinion already expressed by us, renders a decision of it unnecessary.

The defendant also claimed, in his defence, that as the legacy was, by the will of the testator, payable to Mrs. *Graves*, the defendant's wife, and was intended, as he supposed, for her sole benefit, and was actually paid to her, he was not liable. But we think, that in legal effect, the money was received by the defendant : although delivered into the hands of the wife, it was done in his presence, with his consent, and with his subsequent approval, and became subject to his disposal.

The jury were instructed, to allow interest on the sum paid, from the time it was received, by the defendant, on the ground, that it was received by him, in his own wrong, and should have been immediately restored. But a majority of the court think differently ; (a) and that no interest could accrue, under the circumstances, until demand of repayment was made. This excess of interest, therefore, allowed by the jury, must be remitted ; and the court will not direct a new trial.

In considering the legal questions in this case, we are necessarily confined to the facts apparent on the record, and may not indulge in any speculations into circumstances connected with the settlement of *David Northrop's* estate, and from which, the defendant might have considered himself, as he probably did, fairly entitled to retain the money thus received by him.

In this opinion the other Judges concurred.

*Part of interest to be remitted.*
*New trial not to be granted.*

(a) The Chief Justice, by whom the jury had been instructed, probably had not changed his opinion on this point.

