PARK BROTHERS & CO., LIMITED, *vs.* THE BLODGETT & CLAPP CO.

First Judicial District, Hartford, January Term, 1894. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, JS.

The distinction between mistakes of law and fact, while recognized to a certain extent, is not, practically, so important as it is often represented to be in the matter of reforming written instruments. It is no longer true, if it ever was, that a mistake of law is no ground for reformation in any case. The more important question is whether the particular

mistake is such as a court of equity will correct; and this depends upon whether the case falls within the fundamental principle of equity, that in legal transactions no one shall be allowed to enrich himself unjustly at the expense of another, through, or by reason of, an innocent mistake of law or fact, entertained without negligence by the loser, or by both parties.

But in reforming written business contracts courts of equity ought to move with great caution; the proof of the mistake and that it really gives an unjust advantage to one party over the other ought to be of the most convincing character.

The plaintiff, by a written proposal accepted in writing by the defendant, agreed with the latter to supply the defendant with fifteen net tons of tool steel, to be furnished prior to January 1st, 1890, at stated prices, and " to be specified for * * * as your wants may require." The defendant having failed to order the full number of tons within the time stipulated, the plaintiff sued for a breach of the contract. The defendant answered, alleging that the parties, prior to the execution of such written contract, had orally agreed that the plaintiff should supply the defendant within the stated time with such steel to an amount not exceeding fifteen tons, " as the defendant's wants during that time might require," and that by the mistake of the parties the written contract did not embody the actual agreement so made by them; and prayed that the contract might be reformed. *Held,* that oral testimony was admissible to prove the alleged mistake and that the court below had power to reform the contract if clearly satisfied as to the facts alleged by the defendant.

[Argued January 4th—decided February 8th, 1894.]

ACTION to recover damages for breach of written contract to purchase a certain quantity of steel ; brought to the Court of Common Pleas in Hartford County and tried to the court, *Taintor, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors of the court in the admission of testimony. *No error.*

The case is sufficiently stated in the opinion.

*Albert H. Walker,* for the appellant (plaintiff).

In the following cases, each of which is identical in every material point with the case at bar, a reformation of the written contract was refused. *Wheaton* v. *Wheaton,* 9 Conn., 96 (1831) ; *Broadwell* v. *Broadwell,* 1 Gilman, 604 (1844) ; *Sibert* v. *McAvoy,* 15 Ill., 106 (1853) ; *Gordere* v. *Downing,* 18 Ill., 492 (1857) ; *Wood* v. *Price,* 46 Ill., 439 (1868) ; *Allen* v. *Anderson,* 44 Ind., 400 (1873) ; *Heavenridge* v. *Mondy,* 49

Ind., 439 (1875); *Rector* v. *Collins*, 46 Ark. 174 (1885); *Fowler* v. *Black*, 136 Ill., 376 (1891).

*Edward S. White*, for the appellee (defendant).

I. Parol testimony was the only kind of proof possible, and in its admission that was no error. "It is very certain that courts of equity will grant relief upon clear proof of a mistake, notwithstanding that the mistake is to be made out by parol evidence." 1 Story's Eq. Juris., § 153; *Woodbury Savings Bank* v. *Charter Oak Life Ins. Co.*, 31 Conn., 529.

II. Courts of equity relieve against mistakes of law as well as mistakes of fact. *Stedwell* v. *Anderson*, 21 Conn., 139; *Woodbury Savings Bank* v. *Charter Oak Life Ins. Co.*, *supra; Evans's Appeal*, 51 Conn., 435. "Equity will generally relieve either party against a mutual mistake of law affecting the written expression of the agreement." Brown on Parol Evidence, p. 79.

TORRANCE, J. This is an action brought to recover damages for the breach of a written contract, dated December 14th, 1888. The contract is set out in full in the amended complaint. It is in the form of a written proposal addressed by the plaintiff to the defendant, and is accepted by the defendant in writing upon the face of the contract. Such parts of the contract as appear to be material are here given: —" We propose to supply you with fifteen net tons of tool steel, of good and suitable quality, to be furnished prior to January 1st, 1890, at" prices set forth in the contract for the qualities of steel named therein. "Deliveries to be made f. o. b. Pittsburgh, and New York freight allowed to Hartford. To be specified for as your wants may require." The contract was made at Hartford, by the plaintiff through its agent A. H. Church, and by the defendant through its agent J. B. Clapp.

After filing a demurrer and an answer which may now be laid out of the case, the defendant filed an "answer with demand for reformation of contract," in the first paragraph of which it admitted the execution of said written contract.

The second, third and fourth paragraphs of the answer are as follows:—

"The defendant avers that on or about December ——, 1888, it was agreed by and between the plaintiff and defendant, the plaintiff acting by its said agent, A. H. Church, that the plaintiff should supply the defendant prior to January 1st, 1890, with such an amount of tool steel, not exceeding fifteen tons, as the defendant's wants during that time might require, and of the kinds and upon the terms stated in said contract, and that the defendant would purchase the same of the plaintiff on said terms.

"3. That by the mistake of the plaintiff and defendant, or the fraud of the plaintiff, said written contract did not embody the actual agreement made as aforesaid by the parties.

"4. That the defendant accepted the proposal made to it by the plaintiff, and contained in said written contract, relying upon the representations of the plaintiff's said agent then made to it, that by accepting the same the defendant would only be bound for the purchase of such an amount of tool steel of the kinds named therein as its wants prior to January 1st, 1890, might require, and the defendant then believed that such proposal embodied the terms of the actual agreement made as aforesaid by and between the plaintiff and defendant." The fifth and last paragraph of the answer is not now material. The answer claimed, by way of equitable relief, a reformation of the written contract.

In reply the plaintiff denied the three paragraphs above quoted; denied specifically that the written contract did not embody the actual agreement made by the parties; and denied the existence of any joint mistake or fraud.

Thereupon the court below, sitting as a court of equity, heard the parties upon the issues thus formed, found them in favor of the defendant, and adjudged that the written contract be reformed to correspond with the contract as set out in paragraph 2 of the answer. At a subsequent term of the court final judgment in the suit was rendered in favor of the defendant.

The present appeal is based upon what occurred during the trial with reference to the reformation of the contract. Upon that hearing the agent of the defendant was a witness, on behalf of the defendant, and was asked to state "what conversation occurred between him and A. H. Church in making the contract of December 14th, 1888, at and before the execution thereof and relevant thereto." The plaintiff "objected to the reception of any parol testimony on the ground that the same was inadmissible to vary or contradict the terms of a written instrument, or to show any other or different contract than that specified in the instrument, or to show anything relevant to the defendant's prayer for its reformation." The court overruled the objection and admitted the testimony, and upon such testimony found and adjudged as hereinbefore stated.

The case thus presents a single question—whether the evidence objected to was admissible under the circumstances; and this depends upon the further question, which will be first considered, whether the mistake was one which, under the circumstances disclosed by the record, a court of equity will correct. The finding of the court below is as follows: —"The actual agreement between the defendant and the plaintiff was that the plaintiff should supply the defendant, prior to January 1st, 1890, with such an amount of tool steel, not exceeding fifteen tons, as the defendant's wants during that time might require, and of the kinds and upon the terms stated in said contract, and that the defendant would purchase the same of the plaintiff on said terms. But by the mutual mistake of said Church and said Clapp, acting for the plaintiff and defendant respectively, concerning the legal construction of the written contract of December 14th, 1888, that contract failed to express the actual agreement of the parties; and that said Church and said Clapp both intended to have the said written contract express the actual agreement made by them, and at the time of its execution believed that it did." No fraud is properly charged, and certainly none is found, and whatever claim to relief the defendant may have must rest wholly on the

ground of mistake.   The plaintiff claims that the mistake
in question is one of law and is of such a nature that it can-
not be corrected in a court of equity.

That a court of equity under certain circumstances may
reform a written instrument founded on a mistake of fact is
not disputed ; but the plaintiff strenuously insists that it
cannot, or will not, reform an instrument founded upon a
mistake like the one here in question which is alleged to be
a mistake of law?   The distinction between mistakes of law
and mistakes of fact is certainly recognized in the text books
and decisions, and to a certain extent is a valid distinction ;
but it is not practically so important as it is often represented
to be.   Upon this point Mr. Markby, in his " Elements of
Law," sections 268 and 269, well says:—" There is also a
peculiar class of cases in which courts of equity have en-
deavored to undo what has been done under the influence
of error and to restore parties to their former position.   The
courts deal with such cases in a very free manner, and I
doubt whether it is possible to bring their action under any
fixed rules.   But here again, as far as I can judge by what
I find in the text books, and in the cases referred to, the
distinction between errors of law and errors of fact, though
very emphatically announced, has had very little practical
effect upon the decisions of the courts.   The distinction is
not ignored, and it may have had some influence, but it is
always mixed up with other considerations which not unfre-
quently outweigh it.   The distinction between errors of law
and errors of fact is therefore probably of much less impor-
tance than is commonly supposed.   There is some satisfac-
tion in this because the grounds upon which the distinction
is made have never been clearly stated."

The distinction in question can therefore afford little or no
aid in determining the question under consideration.   Under
certain circumstances a court of equity will, and under oth-
ers, it will not reform a writing founded on a mistake of fact ;
under certain circumstances it will, and under others it will
not, reform an instrument founded upon a mistake of law.
It is no longer true, if it ever was, that a mistake of law is

no ground for relief in any case, as will be seen by the cases hereinafter cited. Whether, then, the mistake now in question be regarded as one of law or one of fact is not of much consequence; the more important question is whether it is such a mistake as a court of equity will correct; and this perhaps can only or at least can best be determined by seeing whether it falls within any of the well recognized classes of cases in which such relief is furnished. At the same time the fundamental equitable principle which was specially applied in the case of *Northrop* v. *Graves*, 19 Conn., 548, may also, perhaps, afford some aid in coming to a right conclusion. Stated briefly and generally, and without any attempt at strict accuracy, that principle is, that in legal transactions no one shall be allowed to enrich himself unjustly at the expense of another, through or by reason of an innocent mistake of law or fact entertained without negligence by the loser, or by both. If we apply this principle to the present case, we see that by means of a mutual mistake in reducing the oral agreement to writing the plaintiff, without either party intending it, gained a decided advantage over the defendant to which it is in no way justly entitled or at least ought not to be entitled in a court of equity.

The written agreement certainly fails to express the real agreement of the parties in a material point; it fails to do so by reason of a mutual mistake, made, as we must assume, innocently and without any such negligence on the part of the defendant as would debar him from the aid of a court of equity; the rights of no third parties have intervened; the instrument if corrected will place both parties just where they intended to place themselves in their relations to each other; and if not corrected it gives the plaintiff an inequitable advantage over the defendant. It is said that if by mistake words are inserted in a written contract which the parties did not intend to insert, or omitted which they did not intend to omit, this is a mistake of fact which a court of equity will correct in a proper case. *Sibert* v. *McAvoy*, 15 Ill., 106. If then the oral agreement in the case at bar had been for the sale and purchase of five tons of steel, and in reducing

the contract to writing, the parties had by an unnoticed mistake inserted " fifteen tons " instead of " five tons," this would have been mistake of fact entitling the defendant to the aid of a court of equity. In the case at bar the parties actually agreed upon what may, for brevity, be called a conditional purchase and sale, and upon that only. In reducing the contract to writing they, by an innocent mistake, omitted words which would have expressed the true agreement and used words which express an agreement differing materially from the only one they made. There is perhaps a distinction between the supposed case and the actual case, but it is quite shadowy. They differ not at all in their unjust consequences. In both, by an innocent mistake mutually entertained, the vendor obtains an unconscionable advantage over the vendee, a result which was not intended by either. There exists no good substantial reason as it seems to us why relief should be given in the one case and refused in the other, other things being equal. It is hardly necessary to say that in cases like the one at bar, courts of equity ought to move with great caution. Before an instrument is reformed under such circumstances, the proof of the mistake and that it really gives an unjust advantage to one party over the other, ought to be of the most convincing character. " Of course the presumption in favor of the written over the spoken agreement is almost resistless ; and the court has wearied itself in declaring that such prayers (for relief of this kind) must be supported by overwhelming evidence, or be denied." *Palmer* v. *Hartford Ins. Co.*, 54 Conn., 501.

We are not concerned here, however, with the amount or sufficiency of the proofs upon which the court below acted ; nor with the sufficiency of the pleadings ; we must upon this record assume that the pleadings are sufficient and that the proofs came fully up to the highest standard requirements in such cases. Upon principle then we think a court of equity may correct a mistake of law in a case like the one at bar, and we also think the very great weight of modern authority is in favor of that conclusion. The case clearly falls within that class of cases where there is an antecedent

agreement, and in reducing it to writing, the instrument
executed, by reason of the common mistake of the parties as
to the legal effect of the words used, fails as to one or more
material points, to express their actual agreement. It is
perhaps not essential in all cases that there should be an an-
tecedent agreement, as appears to be held in *Benson* v. *Mar-
koe*, 37 Minn., 30 ; but we have no occasion to consider that
question in the case at bar.   The authorities in favor of the
conclusion that a court of equity in such cases will correct
a mistake even if it be one of law are very numerous, and
the citation of a few of the more important must suffice.

In *Hunt* v. *Rousmaniere's Administrators*, 1 Pet., 1, decided
in 1828, it is said : " Where an instrument is drawn and exe-
cuted which professes, or is intended to carry into execution
an agreement, whether in writing or by parol, previously en-
tered into, but which by mistake of the draftsman, either as
to fact or law, does not fulfill, or which violates the manifest
intention of the parties to the agreement, equity will correct
the mistake, so as to produce a conformity of the instrument
to the agreement."   It was said in the argument before us
that this was a mere *obiter dictum*, but that is hardly correct.
It is true the case was held not to fall within the principle,
but the principle was said to be "incontrovertible " (p. 13),
and was applied to the extent at least of determining that
the case then before the court did not come within it.   In
*Snell* v. *Ins. Co.*, 98 U. S. 85, the court applied the principle
so clearly stated in the case last cited, and reformed a policy
of insurance though the mistake was clearly one as to the
legal effect of the language of the policy.

In numerous other decisions of that court the same prin-
ciple has been cautiously but repeatedly applied, but it is not
necessary to cite them.   On the general question, whether
a court of equity will relieve against a mistake as to the legal
effect of the language of a writing, the case of *Griswold* v.
*Hazard*, 141 U. S., 260, is a strong case, though perhaps
hardly an authority upon the precise question in this case.
*Canedy* v. *Marcy*, 13 Gray, 373, was a case where the oral
contract was for the sale of two-thirds of certain premises,

but the deed by mistake of the scrivener conveyed the entire premises. The words used were ones intended to be used in one sense, the error being that all concerned supposed those words would carry out the oral agreement. This was clearly a mistake " concerning the legal construction of the written contract," but the court by Chief Justice SHAW said :—" We are of the opinion that courts of equity in such cases are not limited to affording relief only in cases of mistake of fact, and that a mistake in the legal effect of a description in a deed, or in the use of technical language may be relieved against upon proper proof." In *Goode* v. *Riley*, 153 Mass., 585, decided in 1891, the court says :—" The only question argued is raised by the defendant's exception to the refusal of a ruling, that, if both parties intended that the description should be written as it was written, the plaintiff was not entitled to a reformation. It would be a sufficient answer that the contrary is settled in this Commonwealth," —citing a number of cases.

In *Kernnard* v. *George*, 44 N. H., 440, the parties, by mistake as to its legal effect, supposed a mortgage deed to be valid when it was not. The court relieved against the mistake and said :—" It seems to us to be a clear case of mutual mistake, where the instrument given and received was not in fact what all the parties to it supposed it was and intended it should be; and in such a case equity will interfere and reform the deed and make it what the parties at the time of its execution intended to make it; and in this respect it makes no difference whether the defect in the instrument be in a statutory or common law requisite, or whether the parties failed to make the instrument in the form they intended, or misapprehended its legal effect."

In *Eastman* v. *Provident Mut. Relief Association*, 65 N. H., 176, decided in 1889, the mistake was as to the legal effect of an insurance certificate, but the court granted relief by way of reformation. The court says : " Both parties intended to make the benefit payable to Gigar's administrator. That it was not made payable to him was due to their mutual misapprehension of the legal effect of the language used in

the certificate. * * * Equity requires an amendment of the writing that will make the contract what the parties supposed it was, and intended it should be, although their mistake is one of law, and not of fact."

In *Truesdell* v. *Lehman et al.*, 47 New Jer. Eq., 218, the marginal note is as follows :—" Where it clearly appears that a deed drawn professedly to carry out the agreement of the parties previously entered into, is executed under the misapprehension that it really embodies the agreement, whereas, by mistake of the draughtsman either as to fact or law, it fails to fulfill that purpose, equity will correct the mistake by reforming the instrument in accordance with the contract."

In a general way the same rule is recognized and applied with more or less strictness in the following cases : *Clayton* v. *Freet*, 10 Ohio St., 544 ; *Bush* v. *Hicks*, 60 N. Y., 298 ; *Andrews* v. *Andrews*, 81 Me., 337 ; *May* v. *Adams*, 58 Vt., 74 ; *Griffith* v. *Townley*, 69 Mo., 13 ; *Benson* v. *Markoe*, 37 Minn., 30 ; *Gump's Appeal*, 65 Pa. St., 476 ; *Cooper* v. *Phibbs*, 2 H. L. Cases, 170. See also Pomeroy's Eq. Jur., vol. 2, § 845, and Bispham's Principles of Equity, §§ 184 to 191.

And whatever the law may be elsewhere this is certainly the law of our own State. *Chamberlain* v. *Thompson*, 10 Conn., 243 ; *Stedwell* v. *Anderson*, 21 id., 144 ; *Woodbury Savings Bank* v. *Ins. Co.*, 31 id., 518 ; *Palmer* v. *Ins. Co.*, 54 id., 488, and *Haussman* v. *Burnham*, 59 id., 117. Indeed, since the time of *Northrop* v. *Graves*, *supra*, it is difficult to see how our law could have been otherwise. We conclude then that by our own law, and by the decided weight of authority elsewhere, the defendant was entitled to the relief sought. If this is so, then clearly he was entitled to the parol evidence which the plaintiff objected to ; for in no other way ordinarily can the mistake be shown. " In such cases parol evidence is admissible to show that the party is entitled to the relief sought." *Wheaton* v. *Wheaton*, 9 Conn., p. 96. " It is settled, at least in equity, that this particular kind of evidence, that is to say, of mutual mistake as to the meaning of words used, is admissible for the negative purpose we have mentioned. And this principle is entirely consistent

with the rule that you cannot set up prior or contemporaneous oral dealings to modify or override what you knew was the effect of your writing." *Goode* v. *Riley*, 153 Mass., 585 ; Reynolds' Evidence, § 69 ; 1 Greenleaf's Evidence (15th ed.), § 269*a* ; Stephens' Digest (Evidence), § 90.

The view we have taken of this case renders it unnecessary to notice at any length the cases cited.by counsel for the plaintiff in his able argument before us. Upon his brief he cites five from Illinois, two from Indiana and one from Arkansas. After an examination of them, we can only say that most of them seem to support the claims of the plaintiff. If so, we think they are opposed to the very decided weight of authority, and do not state the law as it is held in this State.

Before closing, however, we ought to notice the case of *Wheaton* v. *Wheaton, supra,* upon which the plaintiff's counsel seems to place great reliance. The case is a somewhat peculiar one. Even in that case, however, the court seems to recognize the principle governing the class of cases within which we decide the case at bar falls, for it says :—" It is not alleged that the writings were not so drawn as to effectuate the intention of the parties, through the mistake of the scrivener. On the contrary it is alleged that the scrivener was not even informed what the agreement between the parties was." From the statement of the case in the record and in the opinion, it clearly appears that the mistake was not mutual ; indeed it does not even appear that at the time when the note was executed the other party even knew that there was any mistake at all on the part of anybody. Upon the facts stated the plaintiff in this case did not bring it within the class of cases we have been considering. The case was correctly decided, not on the ground that the mistake was one of law, but on the ground that the mistake of law was one which under the circumstances alleged a court of equity would not correct. The court, however, in the opinion, seems to base its decision upon the distinction between mistakes of law and mistakes of fact ; holding in general and unqualified terms, as was once quite customary, that the lat-

ter could be corrected and the former could not. The court probably did not mean to lay the law down in this broad and unqualified way, but if it did, it is sufficient to say that it is not a correct statement of our law, at least since the decision of *Northrop* v. *Graves, supra.* On the whole, this case of *Wheaton* v. *Wheaton* can hardly be regarded as supporting the plaintiff's contention.

There is no error apparent upon the record.

In this opinion the other judges concurred.