BURTON MANSFIELD, ADMINISTRATOR, *vs.* LAWRENCE LYNCH AND WIFE.

New Haven and Fairfield Cos., April T., 1890. ANDREWS, C. J., CARPEN-
TER, LOOMIS, SEYMOUR and TORRANCE, Js.

*B* was administrator upon the estate of *M,* who died insolvent. Within the
time limited for the presentation of claims the defendant presented a
claim of $400, which *B* paid in full, he at that time supposing the es-
tate solvent and having disallowed certain claims in the belief that they
were invalid and supposing that he had been so advised by the probate

judge. The disallowed claims were afterwards, on suit brought, allowed and the estate was thereby rendered insolvent; and the dividend which the defendant would have received was $290 less than the sum paid her. *B* died and the plaintiff was appointed administrator *de bonis non* of *M's* estate and brought suit to recover this sum of the defendant, which upon demand she had refused to pay.   Held—

1. That *B* if living could have recovered the money if he had sued for it.

2. That the claim became a part of the assets of the estate, to which the plaintiff as administrator *de bonis non* was entitled, and that a suit could be maintained by him for the payment of it.

It did not affect the case that when the over-payment was made the defendant had no knowledge of the condition of the estate or of the mistake under which the payment was made.

And it did not prevent a recovery that the money was paid under a mistake of law.

Where money is paid under a mistake either of law or of fact, it is no defence to an action brought to recover it, that the mistake arose through the plaintiff's negligence, if such negligence caused the defendant no harm.

And it is especially so where the party making the payment acts in a fiduciary capacity.

The conditions under which a party may recover back money which he has paid under a mistake either of law or of fact, are—1. That the money must have been paid by one under a mistake of his rights and his duty and be such as he was under no legal or moral obligation to pay. 2. That the receiver of the money must have no right in good conscience to retain it.

[Argued April 15th—decided July 10th, 1890.]

ACTION by the plaintiff as administrator *de bonis non* of the estate of Dennis McLaughlin, to recover of Ann Lynch, one of the defendants and wife of the other defendant, a sum of money paid to her under a mistake by the original administrator of the estate ; brought to the City Court of the city of New Haven, and heard before *Pickett, J.* Facts found and judgment rendered for the plaintiff against the defendant Ann Lynch, and appeal by her. The case is fully stated in the opinion.

*J. B. Morse,* for the appellant.

1. The court erred in overruling the defendants' demurrer to several paragraphs of the complaint. They state in detail the acts and beliefs of the deceased administrator under which he paid the claim of Mrs. Lynch in full. His acts,

beliefs and declarations are immaterial and were properly demurred to.

2. There is no privity between the plaintiff as administrator *de bonis non*, and Mrs. Lynch, nor between the plaintiff and the former administrator, and the action cannot be maintained in his name.

3. It is not alleged that Mrs. Lynch had knowledge of any of the acts, mistakes or belief on the part of the administrator, or that she received the payment otherwise than in good faith and without fraud ; and it is not stated that he at any time offered to return the note to her, or in any way attempted to relieve her or himself of the consequences of his mistake. It is simply assumed that his mistake was one of law or fact, instead of a mistake of judgment in voluntarily paying certain claims and resisting others.

4. The mistake made by the administrator was not such as equity will relieve, and the plaintiff, his successor as administrator, can have no stronger claim for relief. It is apparent that it was not a mistake of fact. The administrator knew every fact regarding the value of the estate and the number and amount of claims presented. 2 Pomeroy's Eq., § 841; *Allen* v. *Galloway*, 30 Fed. R., 466. If his mistake was only one of judgment it will be conceded that he could not recover the money. 2 Swift's Digest, 92. It is purely a matter of conjecture, unaided by any evidence or by any declaration on his part, whether the controlling motive in his mind when he paid this claim was confidence in his ability to defeat those claims which he considered unjust and fraudulent, or ignorance of his legal liability in case he failed to do so. In either case he was negligent in ascertaining and availing himself of the protection offered him by the statutes. He could have deferred paying any claims until all were passed upon by the commissioners, or could have applied to the court of probate for authority to compound or settle any doubtful claims. Gen. Statutes, §§ 571, 572, 593, 594. " Money paid under a mistake of law with respect to the liability to make payment, but with full knowledge or with means of obtaining knowledge of all the

circumstances, cannot be recovered back." 2 Pomeroy's Eq., § 851. The mistake must be such as the exercise of ordinary diligence would not have prevented. *Bonney* v. *Stoughton*, 122 Ill., 536; *Staples* v. *Staples*, 7 S. E. Rep., 199; *Clarke* v. *Dutcher*, 9 Cow., 674; *Mowatt* v. *Wright*, 1 Wend., 355; *Peterborough* v. *Lancaster*, 14 N. Hamp., 382; *Evans* v. *Gale*, 17 id., 573; *Brainard* v. *Colchester*, 31 Conn., 411. The most liberal statement of the exceptions to the general rules above given is found in *Northrop* v. *Graves*, 19 Conn., 548, cited by the plaintiff, but does not cover this case.

5. Mrs. Lynch can in good conscience retain the-money, and neither administrator could equitably demand it back if he failed to return her note, and place her in as good position to defend and maintain her rights in regard to it as she would have had before the payment. *Evans* v. *Gale, supra.* Besides this, she has received only what was justly due her. The estate owed her the full debt. Again, she has not had, and cannot have under the circumstances, any opportunity to appear and defend her rights before the court of probate against the claims disallowed by the deceased administrator, but now allowed, which she believes to have been unjustly decided as lawful.

*S. A. York* and *A. D. Penney*, for the appellee.

TORRANCE, J. The record in this case discloses the following facts:

On the first of May, 1888, one McLaughlin died intestate, and in fact insolvent, owing the defendant Ann Lynch four hundred dollars upon a promissory note. On May 14th of that year one Bradley was appointed administrator upon McLaughlin's estate. The court of probate limited a time for the presentation of claims, and within the time all the claims finally allowed against the estate, amounting to $1,696.44, were presented to said Bradley.

Of the claims so presented Bradley allowed some and disallowed others. Among the claims of general creditors so allowed (amounting in all to $705.14), was that of the de-

fendant upon said note, amounting with interest to $424.87. The claims disallowed, amounting to $991.30, were in fact valid claims against the estate, but none of them were evidenced by any writing signed by the deceased, and Bradley believed they were not valid claims on that account. He also honestly but erroneously believed that he had been advised by the judge of probate to disallow all claims presented against the estate not evidenced by a writing signed by the deceased, and supposed that one of the claims was barred by the statute of limitations.

On these grounds he disallowed these claims and gave the parties notice of the disallowance. After the time limited for presenting claims had expired, Bradley, acting under the belief that the disallowed claims were no longer claims that could be collected out of the estate, and believing that this being so, the estate was solvent, paid the defendant's claim in full, and took the note into his possession, on the 19th of December, 1888. In so believing and acting he was honestly mistaken, as the court finds, both as to the matters of fact and as to the matters of law.

Afterwards, in May, 1889, certain creditors whose claims had been so disallowed brought suit against Bradley, and thereupon, by the advice of counsel, he represented to the court of probate that the estate was insolvent, and asked that commissioners be appointed to receive and examine all the claims presented. Thereupon, in May, 1889, the court adjudged the estate to be insolvent and appointed commissioners, to whom Bradley in due time presented all the claims against the estate, including those allowed and paid as well as those disallowed by him; all of which the commissioners allowed, and reported their doings to the court on the 28th of July, 1889, which report was duly accepted, and no appeal has been taken therefrom. In the meantime, on July 1st, 1889, Bradley died, and on August 2d, 1889, the plaintiff was duly appointed and qualified as administrator *de bonis non* of the McLaughlin estate.

The estate could at no time in fact pay to the general creditors more than $31\frac{7}{10}$ per cent on the dollar, which was

the percentage finally found due and ordered to be paid by the court.

Before the present suit was brought the plaintiff demanded of the defendant $290.18, which was the amount paid to her by Bradley over and above the allowed percentage. This she refused to pay, and thereupon this suit was brought. The defendant received the amount paid to her by Bradley in good faith, believing the same to be justly due, and she had no actual knowledge of the mistakes on the part of Bradley, or of any of the doings of the commissioners or of the court of probate, before the date of this suit, although public notice thereof was given according to law.

The money so paid to her was by her forthwith deposited in her own name in a savings bank, where it has ever since remained, and is a part of the money attached in this suit.

On these facts the court below rendered judgment that the plaintiff recover of the defendant the $290.18, with interest from December 18th, 1888, when it was paid to her. Whether, upon the facts found, the court erred in so deciding, is the general question presented for our consideration.

From the record it is evident that, in fact and in law, it was the duty of the administrator to pay, and the right of the defendant to receive, only $134.69 ; that the administrator by mistake paid her $290.18 more than she was entitled to receive ; and that the loss, if the over-payment cannot be recovered from the defendant, must fall, either upon Bradley's estate or upon the creditors of the McLaughlin estate. Now, whatever view may be taken of Bradley's action in making the over-payment, it seems unjust that the loss should fall upon the creditors, and if Bradley acted in good faith in making it, and did it under a mistaken view of the law or of the facts, or both, it seems hard that the loss should fall on his estate or upon his bondsman.

On the other hand, if the defendant is compelled to repay this amount, she is no worse off than she would have been if no mistake had been made. She retains her *pro rata* share of the assets, and is not legally harmed, for she thus gets all the law would in any event allow her out of the

then known assets of the McLaughlin estate, and she still holds a valid claim against the estate for the balance due her. Viewed in this light it would seem as if the general result arrived at in the judgment of the court below is fair and equitable, and ought not to be disturbed unless the attainment of such a result in a case like the present is forbidden by some stubborn rule or rules of law.

The defendant claims that the judgment below is erroneous on two grounds : first, because on the facts found Bradley himself in his lifetime had no cause of action against the defendant; and second, if he had, still the present plaintiff as administrator *de bonis non* cannot recover as he now seeks to do upon that cause of action. We will examine these points in their order.

It is claimed that Bradley had no cause of action because his mistake was one of law and not of fact, and because he was guilty of such negligence and laches towards the defendant that no court, either of law or of equity, would have aided him to recover the over-payment.

Bradley paid the defendant's claim in the honest belief that the estate was solvent. But for this belief he would not have paid it in full. It would seem from the finding that this belief arose partly from ignorance of law, and partly from what he mistakenly supposed to be the advice given him by the probate judge, as to the validity of certain claims presented against the estate. He also supposed that one of the claims disallowed was barred by the statute of limitations. It is perhaps not clear from the finding whether the court below regarded the mistake which Bradley made in supposing the estate to be solvent as the result of a mistaken view of law or of fact, or of both combined, nor is the settlement of this question very material.

If we concede what the defendant claims, that the over-payment was the result of a mistake of law with full knowledge of all the facts, still we think, even then, that Bradley upon the facts found would if living have a right to recover the over-payment, upon the principles settled by this court in the case of *Northrop* v. *Graves*, 19 Conn., 548. In that

case the husband of a legatee, as the result of a mistaken view of the law as applied to the construction of a will by the executors, was paid a sum of money to which by law he was not entitled.  In the case at bar the defendant, as the result of a mistaken view of the law as applied in the disallowance of claims against an estate by the administrator, has been paid a sum of money to which she was not by law entitled out of the known assets of McLaughlin's estate. It is true that in *Northrop* v. *Graves* the defendant, at the time the money was paid, knew it was not due under the will, and that this knowledge was an element that entered into the decision of that case, but it was by no means the controlling element.

The court in that case said :—" We mean distinctly to assert that when money is paid by one under a mistake of his rights and his duty, and which he was under no legal or moral obligation to pay, and which the recipient has no right in good conscience to retain, it may be recovered back in an action of indebitatus assumpsit, whether the mistake be one of law or fact ; and this we insist may be done both upon the principles of christian morals and the common law."

Here are two, and only two, conditions laid down to entitle a plaintiff in such cases to recover.  First, the money must be paid by one under a mistake of his rights and his duty, and be such as he is under no moral or legal obligation to pay.  Second, the recipient of the money must have no " right in good conscience " to retain it.

In the case at bar we think the first condition is fulfilled. Bradley was not only under no moral or legal obligation to make the over-payment, but on the contrary it was clearly his duty to retain the money so overpaid and divide it among the other general creditors.  This duty he in fact violated solely because of a mistake of law or fact or both, it matters not which.

It is said however that the second condition is not fulfilled in the case at bar, because as the estate did in fact owe the defendant the whole sum paid, she has " a right in good

conscience" to retain it. In one sense it is true that the estate owed the defendant the amount overpaid, but it is not in any legal or moral sense true that it was the duty of the administrator to pay, or the right of the defendant to receive, her claim in full from the then known assets of the estate. Her right was only to receive her *pro rata* share with the other general creditors, and the unpaid balance still remained a claim in her favor against the estate. If she gets more than this it must be at the expense of the other general creditors or of the administrator. She did in fact get more than she was entitled to solely in consequence of an honest mistake. It is true that when the overpayment was made she had no knowledge of the condition of the estate or of the mistakes of Bradley, but such knowledge on her part is not made one of the conditions of recovery in the case cited, and after she obtained such knowledge she still refused to make the repayment.

Can it then with reason be said she has "a right in good conscience" to retain money which rightfully belongs to the estate, to which she is neither morally nor legally entitled, and which she obtained solely in consequence of an honest mistake which wrought her no harm whatever? Whatever meaning may be given to the somewhat indefinite phrase, "right in good conscience," we think it clear that the defendant had no such right as against Bradley under the circumstances to retain the overpayment, and this fulfills the second condition.

We are aware that upon the general question whether, when all the facts are known, or may with ordinary diligence be known, money paid under a mistake of law may be recovered back, the authorities are in direct conflict, but since the decision of the case of *Northrop* v. *Graves, supra*, there can be no doubt as to the position of this court upon this question in a case like the present. It is unnecessary therefore to cite the decisions of other states upon the question, but if it were many such authorities might be found. Such for instance are the cases of *Culbreath* v. *Culbreath*, 7 Geo.; 64; *Stevens* v. *Goodsell*, 3 Met., 34; *Rogers*

v. *Weaver*, 5 Hammond (Ohio), 536; *Beatty* v. *Dufief*, 11 Louis. Ann., 74.

From the case of *Culbreath* v. *Culbreath*, here cited, which was decided in 1849, a month or two after our own case of *Northrop* v. *Graves*, we quote the following (p. 67):—" The question is, can a party recover back money paid with a knowledge of all the facts, through mistake of the law? We are fully aware that the authorities upon this question are in conflict, as well in England as in this country. Great names and courts of eminent authority are arrayed on either side. It is not one of those questions upon which the mind promptly and satisfactorily arrives at a conclusion. This is true in reference both to principle and authority. * * * I think, and I shall try to prove, that the weight of authority is with us. If it were not so—if authorities were balanced—we feel justified in kicking the beam and ruling according to that naked and changeless equity which forbids that one man should retain the money of his neighbor for which he paid nothing and for which his neighbor received nothing; an equity which is natural, which savages understand, which cultivated reason approves, and which Christianity not only sanctions but in a thousand forms has ordained."

In the case of *Rogers* v. *Weaver*, *supra*, the court say (p. 537:—) " It is an admitted rule that where money has been paid by mistake it may be recovered back in this action. It appears to us that the payment in this case was made under a mistaken understanding of the true situation of the estate. * * * We think it just and equitable, as well as law ul, to infer a promise to repay the sum received more than was due from the fact of its receipt through mistake." The same principle was acted upon in the case of *Bliss* v. *Lee*, 17 Pick., 83.

But it is further said that Bradley knew all the facts and was guilty of gross negligence and laches in this matter towards the defendant, and that on these grounds he had no cause of action. But it nowhere appears that the defendant has been in any way harmed or injured by the claimed

negligence or laches of Bradley. She has not changed her position for the worse on that account. She has her *pro rata* share of the assets now in her hands, and still has a claim for the unpaid balance, even if she is compelled to repay the amount overpaid. If she has given up her note she can undoubtedly easily get it back, and she has in place of it the proved and allowed claim based upon it. We fail to see where she has been legally harmed by Bradley's negligence or laches.

Where money is paid under a mistake of fact, it is no defense to an action brought to recover it that the mistake arose through the plaintiff's negligence, if such negligence caused the defendant no harm. *Appleton Bank* v. *McGilvray*, 4 Gray, 518; *Kingston Bank* v. *Eltinge*, 40 N. York, 391. We think the same principle should apply in a case like the present, even where the mistake is one of law.

We also think that if the law is as laid down in *Northrop* v. *Graves* as to payments of money made by mistake of law by a party acting in his own right, much more ought the law to be so held in a case where the party making the payment acts in some fiduciary capacity as the agent of others.

We hold then that Bradley, if living, would upon the facts found be entitled to recover from the defendant the amount overpaid. The next question is whether the present plaintiff is entitled to recover.

If we are right in our conclusion that Bradley, if living, might on the facts found recover from the defendant the overpayment, then upon principle we see no good reason why the plaintiff may not recover in this action.

It is true that the doctrine of the common law is, that between the administrator and the administrator *de bonis non* there is little or no privity, and that to the latter is committed only the administration of the goods, chattels and credits of the deceased which have not been administered. It may also be true perhaps that if Bradley's estate had made good the overpayment to the plaintiff, Bradley's representatives alone would in that case have had the right

to bring this suit, but, notwithstanding these and other reasons that might be urged, we think the plaintiff can maintain this action.

Bradley parted with certain assets of the estate to the defendant by an act which, under the facts found, gave the defendant no right to retain them as against Bradley acting as administrator. After the overpayment the money over paid still remained assets of the estate, and it was Bradley's duty to recover it back for the benefit of the estate as soon as he knew that the estate was insolvent in fact. After Bradley's death the plaintiff became the sole representative of the estate, the trustee of all persons having an interest in it. *Wiggin* v. *Swett*, 6 Met., 194. It was his duty to take charge of and administer all assets of the estate of the deceased in the hands of the administrator at his decease, or in the hands of third persons, not administered upon. Bradley was, as to the cause of action which he had against the defendant for the overpayment, a trustee for the estate and the other general creditors. Had he in his lifetime instituted a suit to recover the overpayment and then died, the plaintiff by our statute (§ 569) might have entered and prosecuted such suit to final judgment. We think, in a case like the present, he can as well institute a suit himself as to prosecute one brought by his predecessor.

Whether the suit is brought by the administrator *de bonis non*, or by Bradley's representatives, can make little or no difference to the defendant. In the one case she pays back to the estate directly, and in the other indirectly, the amount overpaid. In either case she pays it back. That is the object to be accomplished by either method, and we think the present method is the simplest and cheapest for all concerned and was properly adopted.

We know of no case and have been referred to none wherein it is decided that the administrator may not recover in a case like the present. On the other hand in *Stevens* v. *Goodsell, supra*, the administrator *de bonis non* was allowed to recover in a case very similar to this. See also *Bliss* v. *Lee*, 17 Pick., *supra*, where the executor was

allowed to recover a payment made to a creditor beyond his *pro rata* share by an executor *de son tort*.

There is no error in the judgment of the court below. ·

In this opinion CARPENTER, LOOMIS and SEYMOUR, Js., concurred. ANDREWS. C. J., dissented.