Tarplee *v.* Capp, Adm.

### TARPLEE *v.* CAPP, ADMINISTRATOR.

[No. 3,227.    Filed Feb. 14, 1900.    Rehearing denied June 7, 1900.]

EXECUTORS AND ADMINISTRATORS.—*Decedents' Estates.—Insolvent Estates.—Claims Paid by Mistake.—Recovery by Administrator.—* Where an executor, acting under a misapprehension of the condition of the estate, and believing the same to be solvent, paid a general creditor in full, and it afterward developed that the estate was insolvent, an action may be maintained against the creditor to recover back the overpayment. *pp. 59-61.*

SAME.—*Decedents' Estates.—Insolvent Estates.—Claims Paid by Mistake.—Recovery.—Complaint.—*A complaint against a creditor by the administrator of a decedent's estate to recover a certain per cent. of the amount paid the creditor on the belief that the estate was solvent is not bad for failing to allege that a final dividend had been ascertained and declared by the court in which the estate was pending for settlement, where it was alleged that all of the assets of the estate had been reduced to cash, stating the amount of assets and liabilities, the per cent. the estate would pay and the overpayment to defendant. *p. 61.*

SAME.—*Decedents' Estates.—Insolvent Estates.—Claims.—Recovery.—Pleading.—*An answer in an action by an administrator to recover a portion of a claim paid a creditor under the mistaken belief that the estate was solvent, to the effect that the assets of the estate within the year after the granting of letters testamentary, and at the time defendant's claim was allowed and paid, exceeded the aggregate amount of claims filed and allowed, and that claims were afterward wrongfully and illegally allowed which rendered the estate insolvent, does not constitute a defense to such action. *pp. 61-70.*

From the Shelby Circuit Court.    *Affirmed.*

*B. F. Bennett, T. E. Davidson. D. A. Myers, T. B. Adams* and *Isaac Carter,* for appellant.

*B. L. Smith, C. Cambern, D. L. Smith, K. M. Hord* and *E. K. Adams,* for appellee.

WILEY, C. J.—This was an action by appellee as administrator *de bonis non* of the estate of James W. Anderson deceased, against appellant, to recover an overpayment made to him by a former executor in the belief that the estate was solvent. The case was put at issue, tried by the court, a special finding of facts made, and conclusions of law stated thereon favorable to appellee. Final judgment was rendered accordingly. Appellant's motion for a new trial was overruled, and he has assigned errors as follows: (1) That the complaint does not state facts sufficient to constitute a cause of action, and (2) that the court erred in overruling the demurrer to the complaint; (3, 4, and 5) that the court erred in sustaining appellee's demurrer to the second, third, and fourth paragraphs of answer; (6 and 7) that the court erred in its conclusions of law, and in each conclusion of law; (8) that the court erred in overruling appellant's motion for a new trial. To pass upon the first question presented, it will be necessary to state the material averments of the complaint, which are as follows: That on November 29, 1892, James W. Anderson died testate; that Samuel B. Anderson and William H. Winship were appointed executors, and qualified as such; that, by agreement between the executors, the said Samuel B. Anderson assumed the entire management of the trust; that there came into his hands as assets of the estate from all sources $74,901.77; that he paid preferred claims to the amount of $23,429.27; that he paid unpreferred claims in the sum of $49,322.70, $33,570.99 of which was paid in full, and $16,151.71 partial payments; that said unpreferred claims so paid in full were paid in the belief on the part of said Samuel B. Anderson that the estate was solvent, and that the assets would be largely in excess of the liabilities and cost of administration; that, in addition to the assets so

received, the decedent left real estate in Rush and Decatur counties, Indiana, of the probable value of $73,965; claim, $15,000 secured by second mortgage on 1,300 acres of land in Missouri; that at the time of the payment of said unsecured claims the indebtedness of the estate had not been fully ascertained, but, as far as learned by said executor, did not exceed $75,000; that the lands depreciated in value, and were sold for $61,965; that owing to the depreciation of the land in Missouri there was a loss to the estate on the claim secured by second mortgage of $13,800; that on March 29, 1895, the executors filed their final report and resignation, and appellee was appointed administrator *de bonis non;* that as such administrator he has converted the assets into cash, and sold all the real estate, amounting to $71,428.38; that he has paid expenses of administration, including attorney's fees and for services of executors, in the sum of $10,727.73; that he has paid preferred claims, $23,818.78; that the total unpreferred claims against the estate amounted to $110,952.99; that the total assets received by the executors and appellee, after paying preferred claims and expenses of administration, amount to $85,-988.56, and that said assets properly applied in discharge of the general claims would pay seventy-seven and one-half per cent. on each claim; that on January 10, 1894, Samuel B. Anderson, as executor, paid appellant $120 interest on two $1,000 notes, and on February 13, 1895, he paid the principal and accrued interest, $2,132.30, being the full amount due thereon; that each of said payments was made out of the assets of said estate, and when made the executor and appellant believed said estate to be solvent, with assets more than sufficient to pay all debts and expenses of administration; that it has since been ascertained that the estate is insolvent, and that an order and judgment of the Rush Circuit Court, wherein said estate is pending, was made and entered, and declared said estate insolvent, and ordered that it be settled as such; that a dividend was ordered to be paid

Tarplee *v.* Capp, Adm.

on the general claims of seventy-seven and one-half per cent. It is also charged that a demand was made on appellant for repayment of the amount so paid to him in excess of seventy-seven and one-half per cent., which was refused.

The first objection urged to the complaint is that the appellee, as administrator *de bonis non,* has no right to bring and maintain this action. While there is some conflict in the adjudicated cases, we are inclined to the view that the weight of the authorities and sound reason support appellee's right to maintain the action. In Thornton & Blackledge on Administration and Settlement of Estates, §169, p. 453, the rule is stated to the effect that where an administrator pays to a creditor of the estate the full amount of his claim, believing the estate is solvent, and it turns out that it is insolvent, such administrator may recover back the excess in amount paid, if such claim is not a preferred one. In *East* v. *Ferguson,* 59 Ind. 169, it was held that, where a settlement was made with a creditor of an estate and his claim allowed in full, upon a mutual mistake that the estate was solvent, and the claim is not a preferred one, such facts will constitute such a mistake as will be relieved against, and an action will lie to recover the excess. In *Wolf* v. *Beaird,* 123 Ill. 585, 15 N. E. 161, it was held that where an executor, under the honest belief that the estate was solvent, pays a creditor in excess of his *pro rata* distributive share, he may recover back the overpayment in an action for money had and received for the use of the estate. It was also held in that case that it could make no difference to the defendant whether the plaintiff sued in his representative capacity, or in his individual name. It has been held that where an administrator of a deceased member of a firm, relying upon statements contained in the reports and inventory of the surviving partner of his decedent, paid to one of the heirs and distributees of the estate represented by the administrator a sum in excess of the amount she was entitled to receive, by reason of a depreciation in the value

of the estate of the deceased partner, the administrator was entitled to recover from such heir and distributee the excess, whether the money was paid to her at her request, or was voluntarily paid to her without request, the money having been paid under a mistake of fact, and not under a mistake of law. *Stokes* v. *Goodykoontz,* 126 Ind. 535. The court, by Elliott, J., said: "The money paid by the administrator was paid under a mistake of fact, and not under a mistake of law. The facts which induced the administrator to pay the money * * * were presented to him in a lawful mode, and he had a right to rely upon them."

In Henry's Probate Law, §333, it is said: "As a rule an overpayment to a creditor made by an administrator or an executor may be recovered. It being inferred that he only intended to make such payment as the estate could afford and not to subject himself to personal liability on account of a deficiency of assets. This is, however, contrary to the common law rule. But it is probably essential to the recovery that such payment has been made under the impression that the estate was solvent." *Smith* v. *Smith,* 76 Ind. 236, is in point. In that case, the executors paid to appellant, who was a legatee under the will of the decedent, a certain amount of money and specific property. No account had been taken of the claim of the widow to her statutory allowance of $500, and it turned out that after the distribution to appellant (the residuary legatee) there was not left sufficient assets with which to pay the widow's claim for $500. Referring to the rule and the authorities in support of it, that, ordinarily, the payment of a demand, without compulsion and without fraud and with a full opportunity of obtaining such knowledge, can not be recovered back, the court, by Bicknell, C. C., said: "But such a rule is not applicable to legacies, or to money paid upon distribution by an executor. A legatee or a distributee may be required to give a bond, conditioned to refund his ratable proportion of the estate, if necessary. Decedent's Act,

§§120, 140. And the failure of the executor to take out such a bond will not release the legatee or distributee from his liability to refund, when necessary, for the payment of debts, legacies or claims." The following cases are also in point: *Mansfield* v. *Lynch,* 59 Conn. 320, 22 Atl. 313, 12 L. R. A. 285; *Walker* v. *Hill,* 17 Mass. 380; *Alexander* v. *Fisher,* 18 Ala. 374; *Rogers* v. *Weaver,* 5 Ohio 536; *Wheadon* v. *Olds,* 20 Wend. 174; *Barnett* v. *Vanmeter,* 7 Ind. App. 45.

It is also urged that the complaint is bad because it does not allege that a final dividend had been ascertained and declared by the court in which the estate was pending for settlement. We do not think this objection is well taken. It is alleged that all the assets of the estate had been reduced to cash; that there was in the hands of appellee $84,988.56 to be applied on the general debts; that the claims filed amounted to $110,952.99, and that the estate could only pay seventy-seven and one-half per cent. on the dollar on the general claims. It is also stated on this basis what the overpayment to appellant was. These averments are sufficiently definite to obviate the objection to the complaint under consideration. We are satisfied from the authorities, and upon sound reason, that the complaint states a cause of action, and that the court correctly overruled the demurrer to it.

Next in the order of discussion appellant urges that the court erred in sustaining the demurrer to the second, third and fourth paragraphs of his answer. The substantial averments of the first paragraph of answer are that the note which appellant held against the decedent, and which was paid by the executor, was justly due and owing to appellant; that it was paid within the first year after the granting of letters testamentary and notice thereof; that the aggregate amount of claims filed against the estate within a year after the granting of letters was $16,000; that the assets of the estate were more than sufficient to discharge all of said

claims, together with the costs of administration, etc., including appellant's note, and that when said note was so paid the assets of the estate were more than sufficient fully to pay and discharge all claims which were filed against the estate within one year after the notice of the appointment of the executors and all preferred claims and costs of administration.

The third paragraph is substantially like the second, but contains the additional averment that the aggregate amount of unpreferred claims allowed against the estate, after the expiration of one year after the granting of letters testamentary and notice thereof, was $47,000,—$40,000 of which was not filed for more than two years after letters were granted, and for more than fifteen months after appellant's claim was paid. The fourth paragraph in addition to averring that appellant's claim was just, and due when it was paid, avers that claims aggregating $40,000 have been wrongfully and illegally allowed against the estate by the administrator de bonis non and his predecessor, Samuel B. Anderson, one of the executors of the will, and but for such wrongful and illegal allowances, the estate would be solvent.

Appellant has not called our attention to any authority in support of either paragraph of his answer, and we are unable to see upon what theory they can be held good. The creditors of the estate were not required by law to file their claims within one year after the granting of letters testamentary and notice thereof. The law does not fix any time within which an estate shall be finally settled, though it is certainly the policy of the law that settlement should be made as speedily as possible, and as the nature of the estate will permit. The administrator of an estate is bound to take notice of all claims, if filed within thirty days before final settlement. Schrichte v. Stites, 127 Ind. 472, and cases there cited.

The second and third paragraphs of answer, which charge the aggregate amount of claims filed within the year to be

Tarplee v. Capp, Adm.

only $16,000, and that the assets of the estate at the time were more than sufficient to discharge all of said claims, etc., do not present any issuable facts, for, as we have seen, claimants may file their claims after the expiration of the year, but in such event they are liable for costs. The facts charged in the fourth paragraph do not constitute any defense, while it does charge wrongful and illegal acts against appellant as administrator, and Samuel B. Anderson as executor, which might render them liable both personally and upon their bonds, in favor of any person interested, yet the facts charged do not constitute any defense in this action. The court correctly sustained the demurrer to each of these paragraphs of answer.

The case was tried by the court, a special finding of facts made, and conclusions of law stated thereon. As a conclusion of law, the court stated that appellee was entitled to recover of appellant $569.70, for which judgment was rendered. At the proper time, the appellant excepted to the conclusions of law, and this is the next question discussed by counsel. An intelligent discussion of the question necessitates a reference to and statement of the facts specially found. The court found that the decedent died testate November 29, 1892; that Samuel B. Anderson and William H. Winship were named in the will as executors; that they gave bond and qualified as such; that, by agreement between the executors, the entire business of the trust was assumed and transacted by Samuel B. Anderson, who was a son of the decedent. It was further found that certain provisions were made in the will for the widow of decedent; and that she accepted such provisions; that at his death the testator held two policies of insurance on his life, one for $10,000, payable to his widow, and one for $11,156.25, payable to the widow and her children; that the aggregate sum of both of said policies was paid to the beneficiaries therein named, and that the interest of the children was assigned to the widow, and she received the entire amount; that at the time

of the decedent's death, he was indebted to appellant upon two notes of $1,000 each; that January 10, 1894, Samuel B. Anderson, as executor, paid appellant on said notes, out of the assets of the estate, $120, and on the same day said debt was renewed, at the request of appellant, by said Samuel B. Anderson signing his name and that of his co-executor to a note for $2,000; that on February 13, 1895, Samuel B. Anderson, as executor, paid said last note and interest, amounting to $2,132.30; that appellant never filed said notes, or either of them, in the clerk's office, as a claim against said estate; that at the time of the decedent's death, the assets of his estate consisted of $11,000 in personal chattels; wheat $8,500; thirty-five acres of land in Decatur county worth $3,183; 2,500 acres of land in Rush county, worth $125,000; 1,320 acres of land in Missouri, worth $26,400; 480 acres of land in Missouri, worth $2,400; eighty acres of land in Tipton county, Indiana, worth $2,700; 160 acres of land in Iowa, worth $1,600; the Grand Hotel property in Rushville, worth $8,000; and other property in Rushville, worth $400; that there was a first lien on the Missouri land of $10,000, making the total value of the estate at the time of the death of the decedent $179,183; that up to the time appellant's note was paid, the amount of claims filed against the estate in the clerk's office did not exceed $15,000; that the total amount of claims, both preferred and general, that had then come to the knowledge of the executors did not exceed $85,000; that said executor, Samuel B. Anderson, had used diligence in trying to ascertain the amount of the indebtedness and assets of the estate; that when appellant's note was paid, the said Samuel B. Anderson and the widow believed said estate was solvent, and that said payment was made by said Samuel B. Anderson in good faith, he supposing the estate to be amply solvent; that, prior to February 3, 1893, said executor borrowed of the said widow all of said insurance money, in the belief that the estate was solvent, and was paid out by him on the *bona fide* debts of the estate; that when said payment

Tarplee *v.* Capp, Adm.

was made to appellant, he, appellant, believed the estate was solvent; that there came to the hands of Samuel B. Anderson, as executor, from all sources, the sum of $74,-901.77, less $1,950, which consisted of a note given as part of the purchase money for the Tipton county lands, which he turned over to appellee, which left the true amount of assets which came into the hands of Samuel B. Anderson $72,951.77; that of said sum he paid on preferred claims $23,429.07; that he paid on general claims $49,322.70; that $33,570.99 of the latter amount was paid on general claims in full, and $16,151.71 was applied as partial payments on general claims; that all of the above general debts were paid during the first year of the trust, after the appointment of the executors, and up to that time the indebtedness of the estate had not been ascertained, but it was believed by the executor not to exceed $85,000; that March 29, 1895, the said Samuel B. Anderson and W. H. Winship filed their final report as executors, together with their resignations, which report was approved and said resignations accepted; that on said day appellant was appointed administrator *de bonis non,* gave bond, and qualified as such. The court further found that 452 acres of the Rush county land in a partition proceeding were set off to the widow of decedent; that afterwards an action was brought in the Rush Circuit Court by certain of the creditors against appellee and the heirs of the decedent, to compel appellee, as administrator, to sell the land so set off to the widow to make assets to pay debts; that in said action, the court found that the money received from insurance policies by the widow was used in the payment of the *bona fide* debts of the decedent, and that she was entitled to be subrogated to the rights of the creditors, and that the land set off to her was of less value than the sum so paid out of said money; that the real estate unsold by the former executor was sold by appellee, but on account of the depreciation of the value of

VOL. 25—5

the real estate, by reason of the panic, the same sold for only $61,965; that on account of a depreciation of real estate in Missouri, resulting from the panic, there was a loss on the real estate there of $13,800, and the estate realized therefrom only $2,000; that appellee, as administrator, has converted all the remaining assets of the estate, real and personal, into cash, and the same amounts to $71,420.38; that he has paid expenses of administration, under the order of the court,$10,727.73, and has paid preferred claims under the order of court, $23,818.78; that the entire amount of indebtedness of the estate did not become known until May, 1895, and the same amounts to about $143,000, including preferred claims, in addition to the court expenses and expenses of administration; that the entire amount of general debts of the estate is $110,952.99; and the total assets received by the former executors, including the said insurance money and the amount received by appellee after the payment of the mortgages, taxes and expenses of administration, amounts to $86,396.67, and that the sum applied *pro rata* on the general debts will pay seventy-seven and one-half per cent. on each and every general debt against said estate; that on January 30, 1897, appellee filed his petition in the Rush Circuit Court to settle said estate as insolvent; that the court found that all the assets of the estate had been reduced to cash, and that there remained an insufficiency of assets to pay the general debts in the sum of $36,621.71, and that said estate was insolvent; that the court further found that said Samuel B. Anderson, as executor, while acting under a misapprehension of the condition of the estate, and believing the same to be solvent, paid certain creditors, whose claims were only general debts against the estate, in full, which claims amounted to $33,570.99; that appellee, as such administrator, was ordered to settle the estate as insolvent, to give notice thereof, which was done, and was also ordered to collect by suit, or otherwise, from said creditors whose claims had been paid in full a sufficient sum to equalize all general creditors of

the estate; that on February 3, 1897, appellee demanded of appellant that he repay to said estate twenty-two and one-half per cent. of the sum so paid to him on said notes by Samuel B. Anderson, as executor, but which the appellant refused to do.

From the facts found we do not see how the court could have reached any other conclusion than that stated. A careful consideration of the facts found by the court leads us to the conclusion that appellee established every fact essential to his recovery. On the proposition that the court erred in its conclusion of law, counsel urge (1) that there is no finding that appellant's claim was paid under a mutual mistake of facts, and that such finding was necessary before appellee could recover. This proposition can not be maintained, for the court expressly found that, when appellant was paid his debt, both he and the executor making the payment believed the estate was solvent. It follows, therefore, that the payment was made under a mutual mistake of the fact as to the solvency of the estate. (2) That there is no finding that the estate was insolvent when appellant's debt was paid, while, on the contrary, it affirmatively appears that it was solvent. It was not necessary to aver in the complaint that the estate was insolvent when the debt was paid, and hence it was not necessary to prove such fact, or for the court to find it, to entitle appellee to recover. The very fact that the estate proved to be insolvent upon final settlement is the material question here, and that fact is found. As to whether the estate was mismanaged by the executor or the administrator, and by reason thereof became insolvent, is a question with which we have nothing to do, for it is in no way presented by the record. (3) That there is no finding that appellee was diligent in ascertaining the conditions of the estate. We are unable to see the necessity of such a finding in a proceeding of this character, and counsel have not convinced us of such necessity. (4) That it is shown that the entire amount of indebtedness became known

in May, 1895, and appellee did not petition to settle the estate as insolvent until January 30, 1897, and that such laches ought to preclude a recovery, and hence the conclusion of law is erroneous. As we have just said, the conduct of the executor and the administrator in the management of the estate is not before us for consideration. While it is true the law demands of an administrator or an executor the strictest account of his stewardship, and imposes upon him due diligence, care, and fidelity in the management of his trust, and places upon him the duty of responding in damages to parties in interest for a breach of his fiduciary duties, and while we may say that the record discloses the fact that both the executor and appellee did not perform all the duties imposed upon them by law, yet the wrongs that followed, if any, are not subject to review in this action. (5) That there is no finding that the estate has been finally settled as insolvent, and that the full and final dividend to which the creditors are entitled has been ascertained and decreed by the Rush Circuit Court, in which the estate is pending, and by reason of which it was impossible for the trial court to determine the amount of the recovery. If the estate had been finally settled as insolvent, it would follow that the administrator would have been discharged, and hence could not prosecute this action. While there is no express finding that the estate has remained open for the purpose of prosecuting this action, there is an abundant evidence to show that this is true, for when the estate was ordered to be settled as insolvent, the administrator was further ordered to prosecute this and other actions of a like character. But, aside from this, appellant's objection is obviated by the findings, showing the aggregate indebtedness, the aggregate assets, and the per cent. that can ratably be paid upon each general claim. While appellant's learned counsel have urged one or two other reasons why the conclusion of law is erroneous, we do not deem them of sufficient importance to take them up and discuss them.

Tarplee *v.* Capp, Adm.

The next question in order of discussion is the overruling of the motion for a new trial. The argument upon this question is directed to the sufficiency of the evidence to sustain the special findings as a whole, and to many of the findings specifically. We will consider only those which counsel have discussed. In finding ten the court found that the widow of decedent loaned to the executor $21,-156.25, being insurance money which she had received from life insurance upon her deceased husband, and appellant urges that this finding is contrary to the evidence. There is some conflict in the evidence upon this point, but there is evidence in the record upon which the court could, and doubtless did, base such finding, and this being the case, we cannot weigh the evidence, and the finding must stand. It is shown that the widow and executor acted in good faith in relation to this matter. Every dollar of the money was applied upon the just debts of the decedent, and the creditors (and appellant was one of them) got the full benefit of that large sum of money. It is also shown that the widow accepted under the will, and, out of a large estate, she received in the end only real estate of less value than the money she advanced to the executor. That money was absolutely hers, and creditors of the estate could lay no claim to it. She allowed it to be used in the payment of debts, and received in lieu thereof real estate which, in value, was less than the money she parted with.

Appellant complains that finding nineteen, wherein it is stated that all the assets of the estate had been converted into cash, is not sustained by the evidence. This complaint is based upon the fact that appellant still has an uncollected note for $1,900, which was given for purchase money of real estate sold by the administrator. In point of fact we may say that, so far as this note is concerned, it has not been reduced to cash, but, as between the creditors and the administrator, it may be properly considered as cash, for the administrator reported the sale of the real estate to the

court as a cash sale, which report was approved by the court, and he stands charged with the cash. In any event, it is shown that appellant let the matter rest as it is, so that the estate might get the benefit of the interest that would accrue, and that the money could be collected at any time when needed; and appellant testified, also, that he considered the note as so much cash, and that he was responsible for it as cash. In this connection it is also urged that the real estate set off to the widow in the partition proceedings belongs to the estate, and, therefore, constitutes assets not yet reduced to cash. Without going into any extended discussion of this question, it is a sufficient answer to appellant's contention to say that the real estate was regularly set off to the widow in a judicial proceeding, and that in a subsequent proceeding by creditors, to require the administrator to sell the real estate so set off to the widow to realize assets with which to pay debts, it was also judicially found that the insurance money received by the widow was used in the payment of debts of the estate, and that she was entitled to be subrogated to the rights of creditors, etc. These facts show that the question now raised by appellant is *res judicata,* and the judicial proceedings to which we have alluded cannot, in this collateral proceeding, be attacked.

The remaining question discussed by appellant's counsel is that pertaining to the conduct and management of the estate on the part of the executor and appellant as administrator *de bonis non.* We do not hesitate to say that the record shows very reprehensible management of the estate, especially on the part of Samuel B. Anderson, but, however reprehensible it may have been, any rights of creditors that have been prejudiced thereby are not here presented for adjudication, and we dismiss the subject without further comment.

Appellant, as shown by the facts, received from the estate money in excess of that to which he was entitled,—money

paid to him under an honest belief and mutual mistake that the estate was solvent, and in excess of the *pro rata* share or per cent. which other creditors of the same class will receive, unless such excess can be recovered. He received the money to which in equity and in good conscience he was not entitled.

The legislature has classified debts against an estate, and has provided the order in which they shall be paid. §2534 Burns 1894, §2378 Horner 1897.

It is the policy of the law that claims of the same class shall stand upon an equality. In this case appellant's claim comes within the seventh class, designated as "general debts." It is not right, therefore, that he should receive payment in full of his debt, when others in the same class receive only seventy-seven and one-half per cent. on the dollar; and to the end that all creditors of this class may receive the same rate per cent. upon their claims, both good law and broad equity demand that appellant refund the excess received by him.

From the whole record, we believe the trial court reached a correct conclusion. Judgment affirmed.