## SALTONSTALL v. HASSETT.
## SAME v. CARNEY.
### Nos. 7235, 7236.

District Court, D. Massachusetts.

April 10, 1940.

584

Edward C. Thayer and Rackemann, Sawyer & Brewster, all of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., for defendant.

FORD, District Judge.

These are suits in which the plaintiff seeks recovery of income taxes for the year 1932 which were paid to the defendants-Collectors. The plaintiff seeks to recover in No. 7235 the sum of $1,693.63, with interest from the date of payment. Recovery for the sum of $20,569.52, with interest from varying dates of payment, is sought in No. 7236. The two cases involve the same facts, were consolidated for trial, and are treated as one in this opinion.

The facts, in part stipulated, are found to be as follows:

The plaintiff was an income beneficiary for life by two trusts created by her father, Peter C. Brooks. The first was a "testamentary trust" created under his will executed December 18, 1908 and duly probated on March 8, 1920. The second was an "inter vivos trust" created by an instrument dated May 15, 1917. One-half of the net income of the "testamentary trust," but not exceeding $40,000, was to be set aside for the benefit of the plaintiff's brother, to wit, Lawrence Brooks, the remainder to be paid to the plaintiff. As to the "inter vivos trust," so much of one-half of the net annual income as might be necessary to bring up the amount set aside under the will for Lawrence Brooks to $40,000 in any year was set aside for his benefit, and the balance was payable to the plaintiff. Lawrence Brooks was living in the calendar year 1932.

The trustees of the "testamentary trust" filed in March, 1933, a fiduciary return of income for 1932 (form 1041) in which was reported a net taxable income of $81,997.50 and a non-taxable income of $18,648.13 making an aggregate of $100,645.63. This return disclosed that the plaintiff's proportionate share of such taxable income was $49,408.90 (dividends $6,440.77, other income $42,968.13). It was stipulated that the trustees made payments to the plaintiff on account of the income of this trust in the sum of $41,413.11 and these payments were included in the trustees' accounts for the year filed and allowed by the Probate Court for Middlesex County, Massachusetts.

Upon an audit of the return, the correct income of said trust, with which this case is concerned, was determined to be $18,648.13 non-taxable income and $83,351.81 taxable income (dividends $10,688.90, other income $72,662.91), making a total net income of $101,999.94. It was further determined that the plaintiff's share of this income under the terms of the trust was 60.8824 per cent and that such percentage of the taxable income determined, i. e., $83,351.81, should be included in her net income, namely, $50,746.59 (dividends $6,-507.66, other income $44,238.93).

There was also filed in March, 1933, by the trustees of the "inter vivos trust" a similar return for 1932 and a net taxable income was disclosed amounting to $8,-029.70. This return further disclosed that the plaintiff's proportionate share of such taxable income was $7,638.83. During the year 1932 the trustees of this trust actually paid to the plaintiff $55,000. It was determined upon audit that the plaintiff's share of the income reported distributable

from this trust and upon which she paid tax was $9,427.53.

The plaintiff filed her income tax return for 1932 in March, 1933, and reported a total income in the amount of $220,975.84, a net income of $175,279.33, and a tax liability of $64,890.26. Included in her net income was the sum of $49,408.90 (dividends $6,440.77, other income $42,968.13) which was reported as her share of the income of the "testamentary trust" above mentioned. In this return the taxpayer also reported her share of the "inter vivos trust" as $7,638.83 (later corrected to $9,427.53).

The Commissioner caused an income tax return (form 1040) to be filed in behalf of the "inter vivos trust" for the year 1932 in which there was included in taxable income $43,644.11 of the trust's 1932 income which the trustees claimed had been withheld from distribution to beneficiaries for the payment of real estate taxes in Chicago, Illinois. The trustees, in behalf of the trust as a taxable entity, were assessed and paid income taxes upon this amount. This tax was considerably less than what the plaintiff would have been compelled to pay had this amount been reported as distributable to her as beneficiary because of the application of surtax rates.

No income tax return for 1932 (form 1040) has been filed by or on behalf of the "testamentary trust" and the trustees have not, as a taxable entity, paid any income taxes for 1932.

The books of the trustees were kept and all returns for tax purposes filed by them and the plaintiff, including those for 1932, upon the "cash receipts and disbursements" basis of accounting. It was further stipulated that the trustees did not seek permission at any time from the Commissioner to change the basis of their returns to an "accrual" basis; that no amended fiduciary returns have been filed by the trustees and nothing has been presented in the case to indicate they considered that the returns they filed in 1933 were incorrect. No demand has ever been made on the trustees of either of these trusts for payment to the plaintiff of any of the income for 1932 which she claims was not distributed. Each of the trusts, of which the plaintiff was an income beneficiary, owned real estate in Chicago, and much of the income was derived from this. This real estate was subject to local taxes for the years 1931 and 1932. However, because of local conditions, no taxes were assessed for 1931 and 1932 until December 31, 1932. No taxes on any of the real estate owned by either of the trusts were paid for the years 1931 or 1932 in the calendar year of 1932. According to the books of the trusts, on December 31, 1931, all of the 1931 net income to that date had been distributed to beneficiaries.

It appeared that $26,465.01 of the "testamentary trust's" 1931 net income which had been charged against income was found to have been so charged incorrectly. It should have been charged to principal. This amount, it was contended by the plaintiff, had been paid by the trustees in 1931 for a capital expenditure, i. e., antecedent taxes on a building in Chicago under a net lease which had been repossessed in that year. This error, however, was properly corrected by transferring the $26,465.01 charge from income to principal and the correcting entry made on the books was, "The above payments were made in 1931 and charged against income in that year," making it appear that this amount was actually paid the beneficiaries in 1931. However, in order to dispose of the issues in this case the discussion proceeds on the assumption it was not paid to the beneficiaries but was withheld from distribution and actually paid for real estate taxes in 1931. The date of this entry was December 31, 1932. Thereafter, an adjustment of the plaintiff's 1931 income tax liability was made by the Commissioner in accordance with the adjustment made in the trustees' books and the taxpayer paid an additional tax on her proportionate share of $26,465.01, to wit, $25,612.07.

It was stipulated that the same managing trustee of both trusts on December 30 or 31, 1932, determined to make no further distributions of income of any year "on hand" in either trust, but to have all such income held by the real estate agents of the trustees in Chicago so as to be available for the payment of 1931-1932 real estate taxes. As a result of this decision the plaintiff contends that $45,717.89 (corrected figure as result of audit, $47,072.20) of the income "on hand" from the "testamentary trust" was not remitted to the plaintiff or other beneficiaries.

It is stipulated (with necessary corrections made as a result of audit) that the

plaintiff arrived at this result in the following manner, to wit:

| | |
|---|---|
| 1932 net income of "testamentary trust" reported (corrected in trustees' fiduciary return) | $ 83,351.81 |
| 1932 non-taxable income reported in same return | 18,648.13 |
| 1931 income of "testamentary trust", charged by error to income and later charged to principal resulting in adjustment in income tax return of plaintiff and upon her share of which she paid tax | 26,465.01 |
| Adjustment of 1932 testamentary income for depreciation | 20.36 |
| Total income chargeable to trustees | 128,485.31 |
| Less amount paid to plaintiff in 1932 ........................... $41,413.11 | |
| Less amount paid to Lawrence Brooks in 1932................. 40,000.00 | 81,413.11 |
| | $ 47,072.20 |

### Testamentary Trust

It is the contention of the plaintiff that she has paid taxes on $37,834.38 of this $47,072.20 and it is included in her taxable income of $50,746.59. She contends she should not be compelled to pay taxes on this amount as she did not receive it and, further, it was not distributable to her. She argues this amount should be taxed to the trustees who sustained large capital losses in 1932 and the fact that the original returns of the trustees were made on an incorrect basis, in that they did not make a reservation with respect to this amount on their returns for 1932, is of no importance.

To prove that she did not actually receive the $41,413.11 distributed to her in 1932 and reported to have been distributed by the trustees in their returns to the Probate Court the plaintiff advances a complex theory which though in primis seems plausible, yet on consideration is without foundation. She argues that of this amount ($41,413.11) the sum of $25,612.07, her proportionate share of the $26,465.01, the latter sum being the amount alleged to have been paid by the trustees in 1931 for antecedent taxes in Chicago, should be appropriated to the payment of her share of the undistributed income of the trust for 1931 and that if that is done, it would leave a remainder of income for that year that was distributed to her of $15,801.04, that the latter sum is 15.4912 per cent of the total net income of the trust for that year (both taxable and non-taxable) of $101,994.94. Then assuming, as she does, that an equal amount of each category of income, taxable and non-taxable, was distributed, she maintains she received 15.4912 per cent of the taxable income of $83,-351.81, which amounted to $12,912.20; that she was taxed for $50,746.59 of the taxable income; that the difference between these two sums, i. e., $37,834.39 should be eliminated from her taxable income for 1932.

First of all, I can see no justification for this deduction of $25,612.07. The plaintiff contends that inasmuch as there is no evidence of any agreement as to what income was being distributed by the trustees, the common law doctrine relating to the appropriation of payments is applicable. The general rule in this connection is known as the "first in, first out" doctrine. It is to the effect that in the case of payments by a debtor to one who is his creditor upon distinct transactions and for different amounts when neither party makes an appropriation at the time, the payments are applied by law to the liabilities of earliest date. Cf. Crompton et al v. Pratt, 105 Mass. 255; Snell v. Rousseau et al., 257 Mass. 559, 154 N.E. 70.

This doctrine is generally applied to cases that involve running accounts between debtor and creditor which include numerous debits and credits. It is applied because it is presumed to be the intention of the parties in the ordinary and usual course of business. It is exceedingly doubtful that it is at all applicable in a case presenting the circumstances we have here. The right to make the appropriation of payments belongs usually to the debtor and if he omits to make it the law presumes an intention on his part to allow the creditor to exercise his election and "if both omit it, the law will apply the payments, according to its own notions of justice. It is certainly too late for either party to claim a right to make an appropriation, after the controversy has arisen * * *." United States v. Kirkpatrick et al., 9 Wheat. 720, 737, 6 L.Ed. 199. The court in the case of Crompton v. Pratt, supra, said that the doctrine would be applied unless some controlling equity requires a different disposition. The doctrine is an equitable one and not at all inexorable in its application. On the facts involved in this case, I see no reason for its application.

I can find no evidence here that the trustees, in making payments of the dis-

tributable share of the plaintiff's income for the year 1932, had the slightest intention of making any payments on any indebtedness due the plaintiff for the income of 1931. In fact the trustees did not realize that they owed the plaintiff any of the $25,612.07 at the time they made the distribution. It was late in 1932, after practically all the distributable income for that year had been paid, that they knew they had erroneously charged this sum to income rather than principal in 1931. What the trustees were doing in paying the 1932 income and what they intended to do was to distribute what they declared in their return was distributable to the beneficiaries and not in any manner to liquidate an indebtedness to the plaintiff. I am inclined to believe that the trustees, particularly the managing trustee who was the plaintiff's son, would be rather surprised if they were informed they were actually liquidating a previous indebtedness. That the taxpayer, who did not testify, did not regard any payment being made on account of 1931 income is evidenced by her 1932 tax return.

It is my conclusion that the sum discussed was not included in the amount of $41,413.11 distributed to the plaintiff.

Another untenable theory relied upon by the taxpayer to prove her right to deduct the item of $37,834.39 from the amount taxed to her, i. e., $50,746.59, is her assumption that an equal percentage of each category of income, viz., taxable and non-taxable, was included in the $41,413.11 distributed to her in 1932. In her percentage computation referred to above she declared, to support her contention, that the item of $41,413.11 was made up of the item of $25,612.07 that has been discussed, $2,888.82 of non-taxable income and $12,912.21 of taxable income. If we eliminate for the reasons discussed above the item of $25,612.07 and we employ, for the sake of discussion, her same percentage system, we would necessarily increase materially the amount of non-taxable income which she contends was included in the amount distributed. How the plaintiff can contend that the non-taxable income is included in the amount of $81,997.50 reported by the trustees as distributable income to the beneficiaries is more than I can understand. This amount was not determined by the trustees by including any non-taxable income. The non-taxable income was figured separately and apart from the taxable income in the fiduciary return; the amount declared distributable appeared under the heading "Beneficiaries' Share of Income and Credits," and the non-taxable income under "Nontaxable Obligations, Liberty Bonds, Etc." What the trustees declared distributable was taxable income. There is no evidence in this case to support her assertion that any of the non-taxable income was part of the amount distributed to the beneficiaries and sustain her theory that she has paid taxes on it and should get it back. The truth of the matter is there is no evidence one way or another in this connection; but it is just as consistent to maintain that the non-taxable income was withheld by the trustees for the purpose of paying taxes as it is for the plaintiff to contend that it was part of the 1932 income reported by the trustees to be distributable to the beneficiaries.

### Inter Vivos Trust

The plaintiff next contends that none of the 1932 income of the "inter vivos trust" was distributed to her, net, and that the sum of her share of the dividends upon which she paid tax and which amounted to $9,427.53 should be eliminated from her taxable income for 1932. She argues that this is so, because the payments of $55,000 that were made to her by the trustees in 1932 from this trust were not income to her because they were paid by mistake and were returned by her to the trustees to pay taxes in Chicago. The facts, in addition to those stipulated and set out above, show that the managing trustee "had no idea how large these unpaid taxes were" in Chicago until his visit to that city late in 1932. He further testified, and I find it to be a fact, that the trustees "always tried to pay our taxes promptly." His testimony further showed that: "I (he) had made a mistake in paying her the income from the 1917 Trust ('inter vivos trust') That I had during 1932 and I determined * * * to have her pay it back to the trust and have the trust send it to Chicago for these taxes. I returned to Boston on the first business day, January 3rd, drew the check in question on my mother's account, (he had a power of attorney) $55,000, for the income that I had paid her and then drew a check for the amount * * * for the Chicago taxes and sent it on January 3rd. These checks were dated December 31st as is my custom in closing accounts for any year."

From this testimony I conclude that the payments made on account of income from this trust were made by mistake. No question is raised by the defendants that the trustees were entitled to withhold the $55,000 paid to the plaintiff for taxes. They did not question that this was a reasonable amount. The defendants only complained that the trustees had not actually done so. Cf. Shirk et al. v. Walker, Mass., 10 N.E.2d 192, 125 A.L.R. 620; McCrory v. Commissioner of Internal Revenue, 5 Cir., 69 F.2d 688; Jack M. Franks v. Com'r, 32 B.T.A. 260, 261. Under the circumstances it is obvious that when these amounts were paid to the plaintiff by mistake she was burdened with the obligation of paying them back. The fact that the plaintiff paid back the exact amount received is conclusive of the fact that the plaintiff was not gratuitously paying money to the trust, but, on the other hand, was liquidating a legal obligation. Appleton Bank v. McGilvray et al., 4 Gray, Mass., 518, 64 Am.Dec. 92; Mansfield v. Lynch, 59 Conn. 320, 22 A. 313, 12 L.R.A. 285. The contention of the government that there was no relation between the amount received and what was paid back is without foundation. There was the most direct relation. These payments which included the $9,427.53, upon which the plaintiff paid tax, were not taxable income to the plaintiff but should be taxed to the trustees. This is plainly so under the doctrine of Freuler v. Helvering, 291 U.S. 35, 42, 54 S.Ct. 308, 311, 78 L.Ed. 634, wherein it is stated: "The test of taxability to the beneficiary is not receipt of income, but the present right to receive it. Clearly an overpayment to a beneficiary by mistake of law or fact, would render him liable for the taxable year under consideration, not on the amount paid, but on that payable. If the trustee should have deducted a sum for depreciation from the year's gross income before ascertaining the amount distributable to Mrs. Whitcomb and the other beneficiaries, but failed to do so, he paid her more than was properly distributable for the taxable year."

On the whole case, it is my conclusion that the income from the "testamentary trust" upon which the plaintiff paid tax was properly distributable to her and the tax was properly assessed; further, that the income for 1932 of the "inter vivos trust" upon which she paid tax was not properly distributable to her and the tax was improperly and illegally assessed and collected. Freuler v. Helvering, supra; Revenue Act of 1932, Chapter 209, Section 162(b), 26 U.S.C.A.Int.Rev.Code, § 162(b).

Let there be judgment for the plaintiff in No. 7235 for the amount of the tax paid to the defendant on the income received by her from the "inter vivos trust", with interest and costs.

Let there be judgment for the plaintiff in No. 7236 for the amount of the tax paid to the defendant on the income received by her from the "inter vivos trust", with interest and costs.